NORTHVILLE AREA NON-PROFIT HOUSING CORPORATION v
CITY OF WALLED LAKE

1.   ZONING—ORDINANCES—PRESUMPTIONS—VALIDITY—BURDEN   OF
     PROOF.

     An amendment to a city zoning ordinance is presumed valid by
       virtue of its adoption by the city council and one who claims
       the ordinance to be invalid has the burden of proving the
       invalidity by a preponderance of the evidence.

2.  ZONING—ORDINANCES—PROOF OF INVALIDITY.

     An attempt to prove an amendment to a zoning ordinance invalid
       for lack of publication of notice of hearing on the amendment,
       as was required, by relying only on the stipulation of the
       opposite party that the city clerk could not find any evidence of
       a proof of publication from an examination of the city records,
       does not sustain the burden necessary to prove the ordinance
       invalid since the stipulation does not support the conclusion
       that the notice was not published.

3.   STATUTES—ORDINANCES—PRESUMPTIONS—VALIDITY—SHOWING   OF
     IRREGULARITY.

     The presumption of validity that attaches to legislative enact-
       ments applies when nothing appears to the contrary in the
       "legislative journals" and until there has been an affirmative
       showing of irregularity, and where the record lacks such proofs,
       the presumption of validity is unrebutted.

4.  MUNICIPAL CORPORATIONS—ZONING—ORDINANCES—PRESUMPTIONS—
     VALIDITY—PROCEDURE.

     A city that is attempting to prove its own zoning ordinance
       invalid stands in no better position than a similarly situated
       private litigant in that it has an obligation to rebut the pre-
       sumption of validity of the ordinance and to establish by a
       preponderance of the evidence that it was in fact invalid

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 58 Am Jur, Zoning §§ 16, 256.
     Construction and application of provisions for variations in applica-
       tion of zoning regulations and special exceptions thereto, 168
       ALR 13.

because its adoption failed to comply with the procedural requirements of the statute, just as would any other litigant who sought to have the ordinance declared invalid for the same reason.

5. MUNICIPAL CORPORATIONS—ZONING—ORDINANCES—PUBLIC POLICY —DUTY OF PUBLIC OFFICER.

It would be contrary to public policy to permit a municipality to strike its apparently properly adopted zoning ordinance amendment on the claim that a public official failed to perform a duty which the law imposed on her under any circumstances, and particularly where a period of approximately four years elapsed between the time the amendment was adopted and the city's attempted declaration of invalidity and the city makes no claim of prejudice resulting to the community from the adoption of the amendment.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 April 5, 1972, at Lansing. (Docket No. 12590.) Decided October 25, 1972. Leave to appeal denied, 389 Mich 768.

Complaint by Northville Area Non-Profit Housing Corporation against the City of Walled Lake and the City Building Inspector for mandamus and injunction seeking a building permit. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Honigman, Miller, Schwartz & Cohn,* for plaintiff.

*Schnelz, Bulgarelli & Allen* and *Louis C. Andrews, Jr.,* for defendants.

Before: QUINN, P. J., and V. J. BRENNAN and TARGONSKI,* JJ.

TARGONSKI, J. We are confronted with the anomalous situation of a government agency claiming a zoning amendment, adopted by it, is invalid be-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

cause of the alleged failure of one of its officials to perform a statutory duty, namely, publish notice of hearing on the proposed amendment. Plaintiff appeals as of right from the trial court's decision ruling the zoning ordinance invalid.

It will be of assistance to the reader of this opinion to have the benefit of certain historical antecedents. Plaintiff is a nonprofit housing cooperative incorporated for the purpose of acting as sponsor of a multiple housing project designed for low- and moderate-income families, and is the land contract vendee of approximately 31.8 acres of land located in the defendant City of Walled Lake. This parcel, according to the classification set forth in the zoning amendment under attack, is RM-1, a classification which permits multiple-family residential (low-rise) construction. Plaintiff is unable to make use of the premises for such multiple-type dwellings in accordance with the site plans submitted to the defendant city absent the validity of the zoning ordinance amendment in question.

We compliment the parties and the trial court that they were able to eliminate a lot of the problems in the consideration of the issues by submitting the matter on stipulated facts. This was done in the trial court and on appeal, the defendants accepted the plaintiff's statement of facts. The stipulation on appeal is pursuant to GCR 1963, 809 and 812.10.

The issue to be decided by the trial court was stipulated to be a decision as to what the zoning classification of the land owned by the plaintiff was, and the uses to which this land may be put. The facts applicable were stipulated as follows:

"I. Plaintiff Northville Area Non-Profit Housing Corp. (Northville) which was incorporated on July 25, 1969, is land contract vendee of approximately 31 acres of land

in the City of Walled Lake, Oakland County, Michigan (Walled Lake) at the northwest corner of Pontiac Trail and West Road.

"II. Northville is purchasing the land on a land contract from Robert C. Leland, Jr., et al. The land contract was signed on December 28, 1970, and calls for a purchase price of $350,000 of which $75,000 was paid at closing. Funds for the purchase came from the Michigan State Housing Development Authority under a Development Fund Loan Security Agreement dated December 28, 1970. * * *

"III. In 1967 the assessment on the land was increased in anticipation of the land being zoned for use as multiple and since then has been assessed on the basis of it being zoned for use as multiple. (The City of Walled Lake does not admit that it is in fact zoned for use as multiple.) * * *

"IV. On or about April 3, 1967, Robert C. Leland Jr., one of the owners of the land, petitioned for rezoning of the land from R-1C (one-family residential) classification to an RM-1 (multiple-family residential low-rise) classification under the Walled Lake Zoning Ordinance. * * *

"V. On April 11, 1967, the Walled Lake Planning Commission (Planning Commission) referred the petition to its plan consultants for recommendation. * * *

"VI. (a) On or about May 4, 1967 property owners within 300 feet of the land were mailed notices of a public hearing to be held before the Plan Commission on May 9, 1967 on the request for rezoning. * * *

"(b) On April 28, 1967 notice of the public hearing to be held before the Plan Commission was published in the *Pontiac Press,* a newspaper of general circulation in Walled Lake. * * * [In addition to a copy of the notice marked Exhibit 6, Exhibit 7 was also attached to the stipulated facts as a list of the property owners to whom such notice was sent.]

"VII. On May 8, 1967 the plan consultants approved the requested rezoning. * * *

"VIII. A public hearing was held by the Plan Commission on May 9, 1967. The Plan Commission recommended that the rezoning be approved by the Walled Lake City Council (City Council) * * *

"IX. On May 16, 1967 the City Council considered the request for rezoning. After discussion the matter was tabled until the next regular meeting of the City Council. * * *

"X. Property owners within 300 feet of the land were mailed notices of a public hearing to be held by the City Council on June 6, 1967. * * * . It was sent to the persons listed on Exhibit 7.

"XI. (a) In the *Pontiac Press,* May 11, 1967, an article entitled 'Walled Lake OK's Rezoning' appeared in which the article specifically stated that the acreage in question had already been rezoned by the City Council from residential to multiple dwelling. * * *

"(b) On May 19, 1967, an article entitled 'Walled Lake Council Acts To Attract Industries To City' in which the request for rezoning was referred to towards the end of the article, appeared in the *Pontiac Press.* The article specifically stated that the City Council would take action on June 6. * * *

"(c) On May 24, 1967 an article relating to the request for rezoning appeared in the *Interlake News,* a newspaper of general circulation in Walled Lake. This article specifically stated that the City Council would hold a public hearing on the request on June 6. * * *

"(d) On June 6 an article relating to the request for rezoning appeared in the *Pontiac Press.* The article specifically stated that a hearing would be held at 8:00 p.m. that evening. * * *

"(e) The City Clerk of Walled Lake will testify that there is no evidence of a formal legal advertisement of the public hearing for June 6 being published by Walled Lake.

"(f) A search of the papers customarily used by Walled Lake failed to disclose a formal legal advertisement of a public hearing for June 6.

"XII. The City Council acted on June 6, 1967 and approved [by a unanimous vote] the request for rezoning by enacting Ordinance 86-66. * * *

"People from the area were in the audience and were heard by the City Council. * * *

"XIII. On June 8, 1967 an article relating to the City

Council action of June 6th appeared in the Pontiac Press. * * *

"XIV. The Zoning Ordinance of the City of Walled Lake is Ordinance 85-66. This Ordinance was amended in September, 1970 by Ordinance 85.66.1-70 which requires site plan approval for certain classifications including RM-1 and sets forth the procedure for such approval. * * *

"XV. On or about September 8, 1970 application was made by Campbell Modular Building, Inc. on behalf of Northville for site plan approval for the land for a multiple residential project. The Plan Commission acted on the request at its meeting of November 10, 1970. Meetings were held by the Plan Commission relating to the request on September 17, 1970, October 13, 1970 and November [10], 1970. * * *

"XVI. During the period between September, 1970 and February 1, 1971, newspapers in the Walled Lake area published details of the proposed development and of the proceedings before the Plan Commission relating to site plan approval.

"XVII. At the time Ordinance 86-66 was enacted Ordinance 87-66 which rezoned a 3.57 acre parcel from an R-1C classification to an RM-2 (multiple-family residential high-rise) classification was also adopted. The same procedure in enacting Ordinance 86-66 was followed in enacting Ordinance 87-66. * * *

"XVIII. Northville is a non-profit housing corporation incorporated for the purpose of acting as sponsor of multiple-family residential project designed for low and moderate income families. Its incorporators are members of the staff of Northville State Hospital.

* * *

"XX. Northville relied on the RM-1 zoning classification when it purchased the land. The State Housing Development Authority relied on the RM-1 zoning classification in extending its loan. Northville would not have purchased the land if it had known the land was not zoned RM-1. The State Housing Development Authority would not have extended its loan if it had known the land was not zoned RM-1.

"XXI. (a) On February 1, 1971, suit was commenced

against Walled Lake, Northville, The Michigan State Housing Development Authority and Robert C. Leland, et al, in the Oakland County Circuit Court, No. 71-7245, by Harold N. Ackley, Ralph and Catherine Buffmyer and William and Orra Jane Staman, members of a class of persons, to wit: all residents, tax payers and real property owners of the City of Walled Lake, to enjoin construction of the project on the grounds that the land was not zoned RM-1. Summary judgment and accelerated judgment in favor of defendants was granted in this suit on April 7, 1971, on the Court's finding 'that plaintiffs have alleged no facts which would confer upon them standing to maintain this cause; that plaintiffs therefore lack standing to bring this cause and lack the legal capacity so to do.' [Appeal was taken by the plaintiffs to the Court of Appeals but was subsequently dismissed for lack of prosecution.]

"(b) On April 22, 1971 suit for mandamus and injunction was commenced against Walled Lake in the Oakland County Circuit Court, No. 71-74952, by Northville seeking a building permit for the project.

"(c) On April 20, 1971 Ralph Buffmyer and Catherine Buffmyer, his wife, William Staman and Orra Jane Staman, his wife, Thomas R. Bye and Jean L. Bye, his wife and Paul H. Green and Betty B. Green, his wife, commenced suit in the Wayne County Circuit Court, No. 179257-R, against Campbell Modular Building, Inc., to enjoin construction of the project on substantially the same grounds as set forth in their Oakland County Circuit Action described in sub-paragraph (d) below.

"(d) On April 30, 1971 Ralph Buffmyer and Catherine Buffmyer, his wife, William Staman and Orra Jane Staman, his wife, Thomas R. Bye and Jean L. Bye, his wife, and Paul H. Green and Betty B. Green, his wife, commenced suit against Northville in the Oakland County Circuit Court, No. 71-75195, to enjoin construction of the project on the grounds that the land was not zoned RM-1.

"XXIV. Northville has entered into the following agreement and/or made the following expenditures relating to the land and the project:

"(a) The land contract described in paragraph II above.

"(b) The Development Fund Loan Security Agreement described in paragraph II above. Northville is now indebted to the State Housing Development Authority in the amount of $85,637.92 representing funds advanced by the State Housing Development Authority for the project.

"(c) An agreement with Campbell Modular Building, Inc. for the construction of the project. Substantial sums have been expended by Campbell Modular Building, Inc. under this agreement.

"(d) An agreement with HMF, Inc. of Michigan to act as housing consultant for the project. HMF, Inc. of Michigan has already been paid $2,800.

"(e) An agreement with Urban Collaborative to act as architectural consultant. Urban Collaborative has already been paid $2,500.

"(f) Engagement of Honigman, Miller, Schwartz & Cohn to act as attorneys for Northville. Fees relating to general corporate work and litigation have been incurred.

"(g) Northville has paid $1,250 for an appraisal and $423 for soil borings."

The defendants contend in argument and briefs that there was no publication of the notice for public hearing before the city council prior to the adoption of the amendment to the zoning ordinance. The plaintiffs do not concede this point. The plaintiff, however, gets into an area of a claim of substantial compliance which we believe does not require an answer in light of the stipulated statement of facts.

It is a well-settled principle of law that there is a presumption in favor of the validity of a legislative enactment, to wit: the amendment to the city zoning ordinance, by virtue of its adoption. It is also well-settled that he who claims the ordinance to be invalid has the burden of proving the invalidity by a preponderance of the evidence. *Jamens v Shelby Twp,* 41 Mich App 461 (1972). Four years

after the adoption of Ordinance 85-66, being an amendment to the original city zoning ordinance, the city advised the plaintiff that they would not issue a building permit because the zoning ordinance amendment was invalid and the zoning classification remained in a single residential category rather than the multiple-dwelling category.

The defendants predicate their position on their claim that the city clerk had failed to publish the notice of hearing before the Council at which the amendment was adopted. They rely on the stipulation of the plaintiff that the city clerk would have testified, had she taken the stand, that she made an examination of the city records and did not find any evidence of a proof of publication. The examination of such records, however, showed an affirmative vote at the council by unanimous ballot adopting the amendment in question. A concession that the city clerk would have testified to her inability to find proof of publication in the city records does not establish that such notice was not published. This matter was submitted on facts stipulated to by both parties. Such stipulated facts do not contain a concession from the plaintiff that such notice was not published. Since no proofs were presented on this issue and the stipulation and concession from the plaintiff do not support such a conclusion, we must find that the defendant city did not sustain its burden of proving the adoption of the ordinance invalid for lack of such publication of notice.

The record submitted to the trial court does not establish by a preponderance of the evidence that the ordinance was not duly enacted. Thus, we must conclude that the enactment met the statutory requirements and the ordinance is valid. The defendant city is in error in stating that the

plaintiff assumed that the zoning ordinance amendment involved in this case was lawfully adopted when, in fact, it was not, because no action or inaction on the part of city officials can make effective an ordinance adopted without observing jurisdictional procedural requirements. The *defendant city jumped to a conclusion* which is not justified by the record. There has been no showing by a preponderance of the evidence that the jurisdictional procedural requirements were not met. Since the city desires to declare the enactment invalid, it has the burden of proof to establish such invalidity by a preponderance of the evidence. This it has failed to do.

The defendant city refers to *Attorney General v Rice,* 64 Mich 385 (1887), cited by the appellant in its brief, as establishing that the presumption of validity applies "when nothing appears to the contrary in the legislative journals". They also say that the presumption of the validity applies "until irregularity is made affirmatively to appear" as stated in *City of Lansing v Michigan Power Co,* 183 Mich 400 (1914), also cited by the appellant in its brief. From the record submitted on appeal there is nothing to show any contrary conclusion in the legislative journals nor was there any affirmative showing of irregularity. Thus, the presumption of validity attaches and stands unrebutted.

In *Rudnik v Mayers,* 27 Mich App 560 (1970), we had a situation where a provision of the zoning ordinance required the recording of existing nonconforming uses with the register of deeds for the county. The Township Board and the Zoning Board failed to comply with the mandatory requirements of the ordinance as to recording. The township then sought to enforce the provisions of the ordinance against the nonconforming use with-

out having itself complied with the recording provisions of the same ordinance. The court, in disposing of the matter, stated "the township board and the zoning board cannot willfully ignore an important part of its own ordinance and thereby deprive plaintiff of rights conferred by another part of the same ordinance". *Rudnik v Mayers, supra,* p 566.

We believe that the City of Walled Lake stands in no better position than a similarly situated private litigant. *Pittsfield Twp v Malcolm,* 375 Mich 135 (1965). The city had the obligation in seeking to rebut the presumption of validity of the ordinance to establish by a preponderance of the evidence that it was in fact invalid because its adoption failed to comply with the procedural requirements of the statute, just as would any other litigant who sought to have the ordinance declared invalid.

William J. Brennan, Jr., now a Justice of the United States Supreme Court and at the time a Justice of the Superior Court of New Jersey, Appellate Division, wrote in *Struyk v Samuel Braen's Sons,* 17 NJ Super 1; 85 A2d 279 (1951), in a situation where an ordinance had been in effect for ten years. The city sought to declare the ordinance invalid because of certain claims of informality and irregularity in the procedure which led to the adoption of the ordinance. In a unanimous opinion the Court held:

"The ordinance has been in effect for ten years and 'public policy forbids an attack based upon informalities and irregularities in the procedure which led to the adoption of the ordinance, when it has been accepted as a valid enactment for a long period of time, and property owners affected by it have conformed to its provisions, and have fixed their status accordingly.' " *Struyk v Samuel Braen's Sons,* 17 NJ Super 9; 85 A2d 282–283.

We come to the same conclusion—that it would be contrary to public policy to permit a municipality to strike its apparently properly adopted zoning ordinance amendment on the claim that a public official failed to perform that duty which the law imposes upon her. This we would hold as a matter of *public policy* under any circumstances, and the more so where a period of approximately four years elapsed between the time the amendment was adopted and the city's attempted declaration of invalidity as in this case.

"The municipality itself cannot question the validity of its own ordinance. If it becomes discontent therewith, the remedy lies in repeal or amendment, which course cannot adversely affect rights heretofore acquired under the sanction of the ordinance." *Springfield Twp v Bensley,* 19 NJ Super 147, 164; 88 A2d 271, 279 (1952).

This is especially significant and applicable where the city makes no claim of prejudice resulting to the community from the adoption of the amendment referred to hereinabove.

In the orderly process of handling real estate transactions where they are affected by provisions of zoning ordinances and amendments, it is essential that the members of the general public and the people buying or selling real estate must be able to rely on the validity of the public record, to-wit: a zoning ordinance and the zoning map issued in accordance with such zoning ordinance, without the necessity of poring over musty files and searching newspaper morgues, going back years in order to avoid a claim by other persons that there was a failure to comply with some technical requirement of law in the adoption of the ordinance in question. To hold otherwise would bring about chaotic conditions beyond all comprehension in the trans-

fer and usage of real estate in any community having a zoning ordinance affecting such land.

We believe that the amendment to the zoning Ordinance 86-66 is valid and that the parcel of land described in the plaintiff's pleadings, which was the subject matter of this contest between the parties, is properly zoned RM-1. However, there being no formal application by the plaintiff for the issuance of a building permit according to the record in this case, mandamus does not appear to be the proper remedy. The issue before the trial court was a determination of the validity of the amendment to the zoning ordinance.

Accordingly, we reverse and remand to the trial court for the entry of a judgment declaring the ordinance valid and the zoning classification of the subject property to be RM-1.

All concurred.