CITY OF JACKSON v THOMPSON-McCULLY COMPANY, LLC

Docket No. 215266. Submitted January 5, 2000, at Lansing. Decided January 18, 2000, at 9:05 A.M.

The city of Jackson and others brought an action in the Jackson Circuit Court against Thompson-McCully Company, LLC, and Blackman Township, seeking injunctive relief against the operation by Thompson-McCully of an asphalt plant in the township at a site bordering the city. Thompson-McCully had secured from the Michigan Department of Environmental Quality (MDEQ) an air use permit (also known as a permit to install) for the plant. The plaintiffs alleged three bases for injunctive relief: the Michigan Environmental Protection Act (MEPA), MCL 324.1701 et seq.; MSA 13A.1701 et seq.; nuisance; and township zoning ordinance violations regarding the rezonings of the plant site. Following a trial, the court, Charles A. Nelson, J., found that the plaintiffs failed to establish any basis for injunctive relief under the MEPA, that the plaintiffs failed to establish a nuisance claim, and that the zoning claim was barred by laches. The court nevertheless treated the case as an appeal from the MDEQ's grant of the permit to install, set aside the permit to install, and remanded the matter to the MDEQ for modification of the permit. When the MDEQ took no action, the court reinstated the permit with conditions set by the court. Thompson-McCully appealed, and the city cross appealed.

The Court of Appeals held:

1. The case must be remanded to the trial court because the record does not contain specific findings of fact by the trial court with respect to whether the plaintiffs established a claim under the MEPA by showing that the conduct of the defendants has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources. MCL 324.1703(1); MSA 13A.1703(1). On remand, the trial court, independently of the MDEQ, must make a determination whether environmental pollution, impairment, or destruction exists or is likely.

2. The trial court did not err in determining that the plaintiffs failed to establish a prima facie case of anticipated nuisance. The evidence did not show an unreasonable and substantial interference with the plaintiffs' use and enjoyment of their properties that is practically certain, strongly probable, or inevitable.

3. The trial court erred in treating the plaintiffs' action as a petition for review of the administrative decision to issue the permit to install, and in granting relief on that basis, in light of the trial court's finding that the plaintiffs were not entitled to relief on any of the three counts alleged in their complaint. Because judgment was rendered in favor of the defendants with respect to the counts alleged by the plaintiffs, the plaintiffs were not entitled to relief. The plaintiffs did not seek judicial review of the permit grant, and the defendants had no notice or opportunity to defend a challenge of the permit. The trial court's grant of injunctive relief based on its review of the permit must be reversed.

4. The trial court did not err in finding that the plaintiffs' challenge to the rezonings of the plant site was barred by laches. Where, as here, a zoning ordinance is not challenged until several years after its enactment, a challenge on the ground that the ordinance was improperly enacted is precluded on public policy grounds. The doctrine of laches applies where, as here, the passage of time combined with a change in condition make it inequitable to enforce a claim. The plaintiffs' challenge of a conditional use permit granted by the township to Thompson-McCully was made moot by the grant of a second such permit, which was not challenged.

Affirmed in part, reversed in part, and remanded.

1. ENVIRONMENT — MICHIGAN ENVIRONMENTAL PROTECTION ACT — PRIMA FACIE CASE.

A plaintiff, in order to establish a claim under the Michigan Environmental Protection Act, must make a prima facie showing that the conduct of the defendant has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources (MCL 324.1703[1]; MSA 13A.1703[1]).

2. NUISANCE — UNREASONABLE INTERFERENCE WITH USE OR ENJOYMENT OF PROPERTY.

A plaintiff, in order to prevail on a claim of nuisance, must prove significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of property.

3. NUISANCE — ANTICIPATED NUISANCE — INJUNCTIONS.

An injunction may issue to prevent a threatened or anticipated nuisance that will necessarily result from the contemplated act, where

the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence.

4. ZONING — ORDINANCES.

A challenge of a zoning ordinance on the ground that the ordinance was improperly enacted is precluded on public policy grounds where the ordinance is not challenged until several years after its enactment; the general public and those buying and selling real estate must be able to rely on the adoption of zoning amendments that remain unchallenged for a period of years.

*Anthony F. Raduazo*, City Attorney, for city of Jackson.

*Rosenfeld, Grover & Frang* (by *Robert M. Grover*), for Jackson Public Schools.

*Thomas D. Wilson & Associates* (by *Bruce Inosencio, Jr.*), for Support to Oppose Plant.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *Teresa S. Decker*), for Thompson-McCully Company, LLC.

Before: SMOLENSKI, P.J., and GRIFFIN and NEFF, JJ.

PER CURIAM. Defendant Thompson-McCully Company, LCC, appeals as of right an order granting injunctive relief, which imposed conditions on the operation of a Thompson-McCully asphalt plant located in Blackman Township. Plaintiff city of Jackson cross appeals the court's order denying plaintiffs' claims based on the Michigan Environmental Protection Act (MEPA), MCL 324.1701 *et seq.*; MSA 13A.1701 *et seq.*, common-law nuisance, and zoning ordinance violations. We affirm in part, reverse in part, and remand.

I

Plaintiffs filed this action in the Jackson Circuit Court on March 12, 1998, seeking injunctive relief to prohibit defendant Thompson-McCully from constructing or operating an asphalt plant on property rezoned in 1987 and 1988 by defendant Blackman Township. The plant site borders the city limits of plaintiff city of Jackson and is near a middle school operated by plaintiff Jackson Public Schools. Plaintiff "Support to Oppose Plant" (STOP) is an unincorporated, voluntary association of citizens who live near the Blackman site. Plaintiffs filed their complaint following the March 9, 1998, issuance of an air use permit (also referred to as a "permit to install") by the Michigan Department of Environmental Quality (MDEQ), which was the final approval necessary for operation of the asphalt plant.

Plaintiffs set forth three claims in their complaint. After a trial, the court found that (1) plaintiffs failed to establish any basis for injunctive relief under the MEPA, (2) plaintiffs failed to establish a nuisance or trespass claim, and (3) the zoning claim was barred by laches. However, the court determined that this was not a MEPA case, but a NREPA (Natural Resources and Environmental Protection Act) case, presumably under MCL 324.5505(8); MSA 13A.5505(8), which governs appeals of permits to install under the NREPA. The court set aside the permit to install and remanded the matter to the MDEQ for modifications, retaining jurisdiction. However, the MDEQ took no action to initiate permit modifications.

In October 1998, the court reinstated the permit with conditions set by the court. Defendant Thompson-McCully appeals as of right the court's action on the permit to install and the conclusions regarding zoning. Plaintiff city of Jackson cross appeals the court's decision on plaintiffs' original claims and its decision to treat their action as a petition for review.

II

In the late 1980s, Thompson-McCully agreed to purchase a forty-nine-acre parcel of property in Blackman Township, bordering the Jackson city limits, to construct a new state-of-the-art asphalt plant. A condition of the purchase agreement was that the property be rezoned from agricultural to light industrial. In 1987, the township rezoned the property, along with other property, to light industrial. Thompson-McCully then purchased the property for approximately $370,000. In 1988, the Blackman site was rezoned to heavy industrial. In May 1994, Thompson-McCully filed an application with the MDEQ's air quality division for an air use permit required for operation of the asphalt plant. Thompson-McCully also applied to Blackman Township for a conditional use permit. With respect to the rezonings and the conditional use permit, Blackman Township provided notice to township property owners within three hundred feet of the property, but not to owners or occupants of property in the city of Jackson.

The township granted the conditional use permit for the asphalt plant in April 1995, and Thompson-McCully constructed an office on the site at a cost of

$90,000. However, no additional construction costs were incurred until 1997 and 1998, when Thompson-McCully expended $5.5 million for the asphalt plant.

III

We first address the trial court's disposition of plaintiffs' claim under the MEPA. This Court reviews questions of law de novo. *Bennett v Weitz*, 220 Mich App 295, 299; 559 NW2d 354 (1996). In light of the Supreme Court's recent decision in *Nemeth v Abonmarche Development, Inc*, 457 Mich 16; 576 NW2d 641 (1998), we remand this case to the circuit court for further findings. We also note the proper standard of review for a claim under the MEPA and direct the trial court to clarify its decision accordingly.

A

To establish a claim under the MEPA, a plaintiff must make a prima facie showing that "the conduct of the defendant has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources." MCL 324.1703(1); MSA 13A.1703(1). The MEPA does not impose specific requirements or standards; it allows courts to determine any adverse environmental effects and take appropriate action. *Nemeth, supra* at 30.

A trial court's factual evaluation of a MEPA claim is essential to the development of the "common law of environmental quality." *Id.* at 24-25, 37. Each MEPA case must be evaluated on the facts of the particular case, using the pollution control standard appropriate to the particular alleged violation. *Id.* at 35. Whether a

plaintiff has established a prima facie case is governed by the general rules of evidence. *Id.* at 25. "[A] plaintiff has established a prima facie case when his case is sufficient to withstand a motion by the defendant that the judge direct a verdict in the defendant's favor." *Id.*

In *Nemeth, id.* at 24-25, the Supreme Court reiterated its previous pronouncement in *Ray v Mason Co Drain Comm'r*, 393 Mich 294, 307; 224 NW2d 883 (1975): " 'judicial development of a common law of environmental quality, as envisioned by the Legislature, can only take place if circuit court judges take care to set out with specificity the factual findings upon which they base their ultimate conclusions.' " Courts should look to the statute itself, subsection 1703(1), for guidance with respect to what should be included in the findings of fact for actions under the MEPA. *Nemeth, supra* at 25; *Ray, supra* at 308.

> When the plaintiff in the action has made a prima facie showing that the conduct of the defendant has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources, the defendant may rebut the prima facie showing by the submission of evidence to the contrary. The defendant may also show, by way of an affirmative defense, that there is no feasible and prudent alternative to defendant's conduct and that his or her conduct is consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction. Except as to the affirmative defense, the principles of burden of proof and weight of the evidence generally applicable in civil actions in the circuit courts apply to actions brought under this part. [MCL 324.1703(1); MSA 13A.1703(1).]

B

In this case, there was extensive expert testimony on air dispersion modeling and on the issue of potential harm from the asphalt plant. The testimony was contradictory. However, the court provided no findings of fact regarding this evidence and its analysis of plaintiffs' MEPA claim. The circuit court's findings are insufficient for this Court to determine whether the trial court reached the proper result on the basis of its findings of fact. See *Ray, supra* at 313 ("The three-sentence findings of facts and conclusions of law . . . clearly fail to meet either the requirements of GCR 1963, 517 [MCR 2.517(A)] or the [M]EPA."). We remand for the circuit court to state specifically its findings of fact.

Remand is also warranted in this case to clarify whether the circuit court's decision was based on its review de novo of the evidence, as required. In a MEPA case, it is error requiring reversal for the trial court to defer to an administrative agency's conclusion that no pollution, impairment, or destruction of a natural resource will occur. *Nemeth, supra* at 34; *West Michigan Environmental Action Council v Natural Resources Comm*, 405 Mich 741, 752-754; 275 NW2d 538 (1979). The MEPA requires a review de novo by the trial court. *Nemeth, supra* at 30. The trial court must independently determine whether pollution, impairment, or destruction exists or is likely. *Id.* at 34. The factors used in this determination necessarily depend on the facts of the case, the natural resources involved, and the evidence presented. *Id.*

Likewise, plaintiffs' claim that the trial court incorrectly required a showing of actual harm rather than likely harm cannot be readily resolved from the

court's opinion. Clearly, a MEPA claim may be founded on "probable damage to the environment." *Id.* at 25, quoting *Ray, supra* at 309. On remand, the trial court must consider the likely harm standard in rendering its decision.

IV

We next consider whether plaintiffs established a prima facie case of common-law nuisance. We find no error in the circuit court's determination that plaintiffs failed to establish a prima facie case of anticipatory nuisance.

To prevail in nuisance, a plaintiff must prove significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of property. *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 67; 602 NW2d 215 (1999). " '[A]n injunction may issue to prevent a threatened or anticipated nuisance which will necessarily result from the contemplated act, where the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence.' " *Keiswetter v Petoskey*, 124 Mich App 590, 599; 335 NW2d 94 (1983), quoting *Faulkner v Brookfield*, 368 Mich 17, 23; 117 NW2d 125 (1962). Equity will not interfere where injury from an anticipated nuisance is doubtful or contingent. *Adkins v Thomas Solvent Co*, 440 Mich 293, 333; 487 NW2d 715 (1992) (LEVIN, J., dissenting); *Faulkner, supra* at 23.

In this case, it is implicit that the trial court determined that the level of interference and harm was not of such degree to constitute anticipatory nuisance. Although plaintiffs contend that the court erred in "deferring to the judgment of the [M]DEQ instead of ruling on the facts before it" in the nuisance claim, as

in the MEPA claim, plaintiffs cite no statutory or other legal authority precluding consideration of an administrative agency's determinations here, as in a MEPA claim. Regardless, the court's conclusion was supported by the testimony of several witnesses at trial. Given the evidence, the court did not err in concluding that plaintiffs failed to establish a prima facie nuisance case. See *Adams, supra* at 72 ("nuisance is appropriate for only *substantial* and *unreasonable* interference with the plaintiff's right to quiet enjoyment" [emphasis in original]). The court's findings and the other evidence cited by plaintiffs do not amount to an unreasonable and substantial interference with plaintiffs' use and enjoyment of their properties that is practically certain, strongly probable, or inevitable.

V

On direct appeal, defendant Thompson-McCully contends that the trial court erred in treating plaintiffs' action as a petition for review of the administrative decision to issue the permit to install and in granting relief on that basis, in light of the court's finding that plaintiffs were not entitled to relief on any of the three counts alleged in their complaint. We agree.

Under the court rules, a "final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings." MCR 2.601(A). As defendant contends, judgment was in favor of defendants on all counts alleged in plaintiffs' complaint: count I (MEPA claim), count II (nuisance/trespass claim), and count III (zoning ordinance violations).

Because judgment was rendered in favor of defendants, plaintiffs were not entitled to relief.

This Court has acknowledged that a MEPA action is independent of an action to review a permit application. *Holly Twp v Dep't of Natural Resources (On Rehearing)*, 194 Mich App 213, 215; 486 NW2d 307 (1992), vacated on other grounds, *Holly Twp v Holly Disposal, Inc*, 440 Mich 891 (1992). Plaintiffs' action did not encompass a review of the permit, which is provided for by statute. MCL 324.5505(8); MSA 13A.5505(8). Defendant Thompson-McCully had no notice or opportunity to defend the permit appeal. There was no basis for the court to convert plaintiffs' action into a permit review after the trial was concluded. "While a court may afford relief not specifically prayed, it may not grant relief not germane to the issues presented by the pleadings." 14 Michigan Law & Practice, Judgment, § 97, p 568. We reverse the circuit court's grant of injunctive relief based on the permit review. Because we reverse, we need not address defendant's contention that the permit review was based on an incorrect standard of review for administrative appeals.

VI

We find no error in the circuit court's finding that plaintiffs' challenge to the rezonings was barred by laches. A trial court's application of laches is reviewed for clear error. *Gallagher v Keefe*, 232 Mich App 363, 369; 591 NW2d 297 (1998).

A

With regard to the conditional use permit issued in 1994, plaintiffs' challenge is moot because Thompson-McCully has secured a new conditional use permit, which apparently has not been challenged. As a general rule, an appellate court will not review a moot issue. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief. *Michigan Nat'l Bank v St Paul Fire & Marine Ins Co*, 223 Mich App 19, 21; 566 NW2d 7 (1997). Because Thompson-McCully is operating under a new conditional use permit, there is no need to decide whether the court erred in finding the 1994 permit void because of the expiration of the allowed time for completing construction.

B

Where a zoning ordinance is not challenged until several years after its enactment, a challenge on the ground that the ordinance was improperly enacted is precluded on public policy grounds. *Richmond Twp v Erbes*, 195 Mich App 210, 217; 489 NW2d 504 (1992); *Northville Area Non-Profit Housing Corp v Walled Lake*, 43 Mich App 424, 434-435; 204 NW2d 274 (1972). The rezonings in this case occurred in 1987 and 1988. Plaintiffs did not challenge the rezonings until nearly ten years later when they filed the instant action in March 1998. During this period, township officials and residents acted in accordance with the rezonings. The 1987 rezoning included not only the Blackman asphalt plant site, but also property for a post office distribution center. The general public and those buying and

selling real estate must be able to rely on the adoption of zoning amendments that remain unchallenged for a period of years. *Id.* at 435-436.

With respect to the interests of Thompson-McCully, in particular, plaintiffs' zoning challenge is barred by laches. The doctrine of laches applies where the passage of time combined with a change in condition make it inequitable to enforce a claim. *City of Troy v Papadelis (On Remand)*, 226 Mich App 90, 96-97; 572 NW2d 246 (1997). The defendant must prove a lack of due diligence on the part of the plaintiff resulting in prejudice to the defendant. *Id.* at 97. Whether laches applies depends on the facts of the particular case. *Id.*

In this case, Thompson-McCully relied on the 1987 rezoning in purchasing the property for the Blackman asphalt plant: the light industrial zoning was a condition of the purchase agreement. Thompson-McCully purchased the property in 1987 for approximately $370,000. In 1994, Thompson-McCully expended approximately $70,000 for site preparation and, in 1995, expended $90,000 to construct an office. Thompson-McCully proceeded with plans to construct the $5,500,000 asphalt plant on the basis that the property was zoned for industrial use. Invalidating the rezoning after defendant purchased the property and had proceeded with plans for the plant clearly prejudices defendant. The proper zoning is a prerequisite for the entire project. It would be inequitable to allow plaintiffs to challenge the rezonings more than nine years after enactment.

Remanded in part for further findings regarding plaintiffs' MEPA claim, affirmed with respect to plaintiffs' nuisance claim and the zoning challenges, and

reversed with respect to the relief granted on the basis of the permit appeal. We do not retain jurisdiction.