# STATE OF MICHIGAN

# COURT OF APPEALS

CITIMORTGAGE, INC.,

        Plaintiff/Counter-Defendant-
Appellee,

v

KEVIN CASEY,

        Defendant/Cross-Defendant-
Appellant,

and

KEVIN G. BURGESS,

        Defendant/Counter-Plaintiff/Cross-
Defendant-Appellant,

and

BANK OF AMERICA, N.A., SORREL WOODS
COMMUNITY ASSOCIATION, and SORREL
WOODS CONDOMINIUM ASSOCIATION,

        Defendants,

and

MATTHEW EBERSOLE and BRIANNA KRUK,

        Defendants/Cross-Plaintiffs-
Appellees.

UNPUBLISHED
November 9, 2017

No. 332908
Macomb Circuit Court
LC No. 2014-000423-CH

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

-1-

Defendants/cross-defendants Kevin Casey and Kevin G. Burgess appeal as of right an April 22, 2016 opinion and order entered in favor of defendants/cross-plaintiffs Matthew Ebersole and Brianna Kruk following a bench trial. We affirm.

## I. BACKGROUND

Casey and Burgess acquired title to a condominium unit by warranty deed in 2004, and together they owned the unit as joint tenants with full rights of survivorship. Casey executed a mortgage on the property in favor of ABN AMRO Mortgage Group, Inc. (ABN), CitiMortgage's predecessor in interest. In 2011, Casey stopped making payments on the mortgage. In 2012, CitiMortgage filed an action seeking reformation of the mortgage to establish Burgess as a mortgagor. The trial court granted summary disposition in favor of Casey and Burgess, finding that equity should not be invoked to save a sophisticated commercial lender from its own mistake. The day after the trial court entered its order, Casey quitclaimed his interest in the property to Burgess, who then sold the property on land contract to Ebersole and Kruk in 2013. In 2014, Casey wrote a letter to the Greater Macomb Title Agency claiming that the prior mortgage was "effectively discharged" in the 2012 action.

CitiMortgage brought the instant action against Casey and Burgess to, *inter alia*, quiet title to the property and confirm the continued existence of the 2004 mortgage that Casey executed.[1] Ebersole and Kruk later intervened as defendants and filed a cross-complaint against Casey and Burgess. The trial court granted CitiMortgage's motion for summary disposition and ruled that Casey, who had previously quitclaimed his interest in the property to Burgess, no longer had any interest in the property, and that CitiMortgage's mortgage continued to be enforceable and encumbered the titles of Burgess, Ebersole, and Kruk. The trial court dismissed CitiMortgage's additional claims. Following a bench trial, the trial court entered a judgment in favor of Ebersole and Kruk on their cross-complaint against Casey and Burgess, finding that Burgess breached the land contract and was liable for fraud for falsely representing that the property was not encumbered by a mortgage, and that Casey was liable for aiding or abetting Burgess in committing fraud. This appeal followed.

## II. JURISDICTION

Initially, CitiMortgage challenges this Court's jurisdiction over Casey's and Burgess's claims on appeal. CitiMortgage argues that because it was granted relief only on its claim to quiet title and its remaining claims were dismissed, and because Casey claimed no interest in the property, Casey is not an aggrieved party with regard to any claim made by CitiMortgage. CitiMortgage further argues that Casey lost standing to challenge CitiMortgage's interest when he conveyed his title to Burgess. Lastly, CitiMortgage argues that Burgess can only claim a right of appeal from orders that he directly challenged in the trial court.

---

[1] The claims against defendants Bank of America, N.A., Sorrell Woods Community Association, and Sorrell Woods Condominium Association were dismissed in 2016.

MCR 7.203(A) requires an appeal by right to be brought by an aggrieved party. In *Federated Ins Co v Oakland Co Rd Comm,* 475 Mich 286, 291-292; 715 NW2d 846 (2006), the Michigan Supreme Court stated:

> To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency. An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [Citations and quotation marks omitted.]

CitiMortgage argues that Casey is not an aggrieved party with regard to any of CitiMortgage's claims because the trial court found that he had no interest in the property and dismissed all remaining claims against him. The only claim brought by CitiMortgage that is at issue on appeal is its claim to quiet title (Count I). Counts II through V of its complaint were dismissed. Casey does not dispute that he has no interest in the property. Therefore, we agree that Casey is not an aggrieved party with regard to CitiMortgage's claim to quiet title. Casey is, however, an aggrieved party with respect to the trial court's judgment finding him liable for aiding or abetting fraud, which is discussed in Parts III and IV of this opinion.

With regard to the other issues on appeal, CitiMortgage argues that Burgess can only claim an appeal of right from orders that he challenged in the trial court, and this Court should only consider the arguments asserted by Burgess below. However, although Burgess would have had to file a motion or raise an objection below to preserve an issue on appeal, he was not required to do so to qualify as an aggrieved party. Burgess meets the definition of an aggrieved party because (1) he had an interest in the property as a land contract vendor, (2) this property interest was affected by the trial court's decision to quiet title in favor of CitiMortgage, and (3) his interest in the outcome of the case was of a pecuniary nature. *Federated Ins Co,* 475 Mich at 291.

We agree, however, that the issue challenging the trial court's decision to deem admitted CitiMortgage's requests for admissions filed against Casey is not properly before this Court. Because the admissions applied only to Casey, Burgess is not an aggrieved party with regard to this issue. Given that Casey has no interest in the property and is not an aggrieved party with respect to CitiMortgage's claim, we dismiss that issue on appeal.

## III. RES JUDICATA AND COMPULSORY JOINDER

Burgess contends that the trial court should have dismissed CitiMortgage's claims because (1) they were barred by the doctrine of res judicata, (2) the rule of compulsory joinder applied, and (3) CitiMortgage failed to establish damages with regard to Counts IV and V of its complaint.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (citation and quotation marks omitted). With regard to the claim that this lawsuit was barred by the doctrine of res judicata, this issue was raised by Burgess in his answer to CitiMortgage's motion for summary disposition on Count I. The trial court granted CitiMortgage's motion for summary disposition on the quiet title claim, thereby rejecting Burgess's assertion of the doctrine of res judicata. Therefore, this issue is preserved.[2]

Burgess's claims regarding compulsory joinder and that Counts IV and V should have been dismissed because there was no evidence of damages are unpreserved, because they were not raised, addressed, and decided by the trial court. See *Mouzon*, 308 Mich App at 419. Nevertheless, this Court may review unpreserved issues "if a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case." *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007) (citation and quotation marks omitted).

"We review de novo both a trial court's decision on a motion for summary disposition and its application of the legal doctrine of res judicata." *Garrett v Washington*, 314 Mich App 436, 440-441; 886 NW2d 762 (2016). We also "review de novo the proper interpretation and application of a court rule." *Id*. at 450.

CitiMortgage's complaint contained five counts. Burgess argues that all five counts were barred by the doctrines of res judicata and compulsory joinder, and Counts IV and V should have been dismissed based on CitiMortgage's failure to establish damages. As CitiMortgage argues, however, the trial court dismissed Counts II, III, IV, and V. Therefore, only CitiMortgage's claim to quiet title (Count I) is at issue on appeal. Because the trial court has already dismissed Counts II, III, IV, and V, any claims regarding those counts are moot. See *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 493; 608 NW2d 531 (2000) ("An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief.").

---

[2] Although the trial court did not expressly address Burgess's argument regarding res judicata, it had previously rejected Casey's assertion of res judicata, agreeing with CitiMortgage that it was required to file a new quiet title action based on Casey's representation to a third party that the mortgage had been discharged. Moreover, "where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005).

## A. RES JUDICATA

In order for the doctrine of res judicata to preclude a claim, three elements must be satisfied: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Garrett*, 314 Mich App at 441 (citation and quotation marks omitted). "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Id.* (citation and quotation marks omitted; alteration in original).

The prior 2012 action brought by CitiMortgage was decided on the merits and involved the same parties as this action. The dispute in this case involves whether CitiMortgage's claim to quiet title could have been resolved in the 2012 action. In *Garrett*, 314 Mich App at 442, this Court explained:

> Our Supreme Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, *exercising reasonable diligence,* could have raised but did not. Accordingly, when examining factors for the third element of res judicata, Michigan courts employ the broad, pragmatic same transaction test, often referred to as the transactional test, rather than the narrower same evidence test. Thus, while the question whether the same evidence is necessary to support claims may have some relevance, the determinative question is whether the claims in the instant case arose as part of the same transaction as did [the plaintiff's] claims in the original action. Under the transactional test, a claim is viewed in factual terms and considered coterminous with the transaction, regardless of the number of substantive theories, *or variant forms of relief flowing from those theories,* that may be available to the plaintiff[.] The Court explained that [t]he transactional test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief. Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* [and] whether they form a convenient trial unit. . . . [Citations and quotation marks omitted; alterations in original.]

As CitiMortgage argues, the 2012 action arose out of Burgess's failure to execute the original ABN mortgage. In that action, CitiMortgage sought to reform the mortgage to include Burgess as a mortgagor. This case arose out of Casey's subsequent quitclaim to Burgess and attempt to have a title company remove the mortgage as an encumbrance. In Count I, CitiMortgage alleged that "[f]ollowing the disposition of the Prior Action Defendant Casey claimed that the ABN Mortgage was 'effectively discharged' pursuant to the Opinion and Order." CitiMortgage further alleged that "[t]he ABN Mortgage remains a valid mortgage" and "Defendant Casey's characterization of the ABN Mortgage as 'effectively discharged' jeopardizes and diminishes Plaintiff's mortgagee interest in the Property." Accordingly, CitiMortgage brought the quiet title action to determine the parties' interests in the property. Because it was based on events that occurred after the 2012 action was resolved, it could not have been raised in the 2012 action. Thus, this claim did not arise from the same transaction as

-5-

the action to reform the mortgage, and the trial court did not err by rejecting Burgess's arguments and granting CitiMortgage's motion for summary disposition on the quiet title count.

Burgess argues that when the 2012 action was filed, Casey had already defaulted on the mortgage, so CitiMortgage could have foreclosed or collected on the note in that action. Counts II and III of CitiMortgage's complaint in the instant case involve claims for default of a promissory note and foreclosure of the ABN Mortgage. Even if CitiMortgage could have asserted those claims in the prior action, those counts are not at issue because they have been dismissed. As discussed earlier, only Count I is at issue, and that count is based on Casey's conduct after the 2012 action had been resolved.

## B. COMPULSORY JOINDER

MCR 2.203(A) provides:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

"In determining whether two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A), res judicata principles should be applied." *Garrett*, 314 Mich App at 451. Accordingly, for the same reasons discussed above, Count I could not have been joined in the 2012 action.

## C. DAMAGES

Finally, Burgess argues that CitiMortgage failed to establish a basis for relief with respect to Counts IV and V because there was no evidence that it suffered a diminution in value. Again, however, because Counts IV and V were dismissed, this argument is moot. See *City of Jackson*, 239 Mich App at 493.

## IV. FRAUD

Casey and Burgess contend that the trial court should not have found them liable for fraud, or aiding or abetting fraud. We disagree.

In *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015), this Court stated:

> This Court reviews a trial court's factual findings in a bench trial for clear error, and reviews its conclusions of law de novo. A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. To the extent that our review requires the interpretation of a statute, our review is also de novo. [Citations and quotation marks omitted.]

## A. BURGESS'S LIABILITY FOR FRAUD

In *1031 Lapeer LLC v Rice*, 290 Mich App 225, 236; 810 NW2d 293 (2010), this Court stated:

> To establish actionable fraud, a plaintiff must show that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew the representation was false or recklessly made the representation as a positive assertion without knowledge of its truth, (4) the defendant made the representation with the intention that the plaintiff act on it, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff suffered injury.

"Importantly, to sustain a claim of fraud, the plaintiff must have reasonably relied on the false representation. There can be no fraud where a person has the means to determine that a representation is not true." *Id*. at 236-237 (citation and quotation marks omitted).

The trial court found that Burgess committed fraud for falsely representing that there was no mortgage on the property and that Casey was liable for aiding or abetting that fraud. Casey and Burgess first argue that Ebersole and Kruk's alleged reliance on Burgess's representation was not reasonable because Kruk testified that Burgess told her and Ebersole that there was a court case pending. Casey and Burgess misinterpret Kruk's testimony. Kruk testified that although she and Ebersole purchased the property from Burgess on land contract in December 2013, Burgess did not tell them about the pending court case until October 2014. So, at the time of purchase, Ebersole and Kruk did not know the condominium unit was the source of pending litigation. They learned that the property was encumbered by a mortgage when the foreclosure notice was posted, and Burgess thereafter said he would obtain a quitclaim deed from Casey. Kruk expressly testified that Burgess did not tell them about the mortgage before they entered the land contract and that she did not learn about the mortgage until October 2014.

Casey and Burgess further argue that there was no indication that the trial court found Burgess's testimony "not credible" when he claimed at trial that he told Ebersole and Kruk about the mortgage. However, relying on Ebersole and Kruk's testimony, the trial court found that Burgess committed fraud, and therefore, it necessarily found Burgess's testimony not credible. Based on Ebersole and Kruk's testimony, the trial court did not clearly err when it found that Burgess failed to disclose the mortgage. See *Trahey*, 311 Mich App at 593.

Casey and Burgess also claim that it was unreasonable for Ebersole and Kruk to rely on Burgess's real estate agent to validate his representation that there was no mortgage on the property because they should have realized that the agent represented Burgess's interest as the seller. Casey and Burgess further argue it was unreasonable for Ebersole and Kruk to not obtain a title insurance policy. Ebersole testified that he did not have an attorney review the land contract because a reputable real estate agent showed them the condominium unit, and Burgess said he would receive a clear title after the land contract was paid in full. The trial court explained, however, in reliance on *In re People v Jory*, 443 Mich 403, 417 n 10; 505 NW2d 228 (1993), that a "defendant who obtains money or property by an affirmative misrepresentation that the property is free from encumbrances is not relieved from guilt by the fact that the purchaser could have detected the fraud by examining the public records[.]" In *Jory*, the Court

stated that "[t]he fact that a mortgage is a matter of public record is no defense to a prosecution for false pretenses." *Id.* Moreover, this Court has stated that the "general rule that there cannot be any fraud if the party allegedly defrauded had the means to determine for him- or herself the truth of the matter" "is only applied when the plaintiffs were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *Alfieri v Bertorelli*, 295 Mich App 189, 194-195; 813 NW2d 772 (2012) (citation and quotation marks omitted). In *Titan Ins Co v Hyten*, 491 Mich 547, 555 n 4; 817 NW2d 562 (2012), our Supreme Court further explained:

> Concerning the reliance prong, it is true that fraud is not perpetrated upon one who has full knowledge to the contrary of a representation. But there is no common-law duty to attempt to acquire such knowledge. For it is well settled law that a payment . . . may be recovered, even if the mistake be due to lack of investigation.

> The Court of Appeals in the instant case held that [t]here can be no fraud where a person has the *means* to determine that a representation is not true. When read in isolation, this statement might support the panel's conclusion that an insurer has a duty to investigate representations made by a potential insured. However, when the statement is read in the full context of the *Nieves* [*v Bell Indus, Inc*, 204 Mich App 459; 517 NW2d 235 (1994)] opinion, as well as other precedent, it is clear that an insurer has no duty to investigate the representations of a potential insured. [Citations and quotation marks omitted; alteration in original.]

Thus, Ebersole and Kruk had no duty to investigate Burgess's representation that there was no mortgage on the property, and Burgess may not defend the claim of fraud based on Ebersole and Kruk's failure to examine the public records. Accordingly, the trial court did not err by finding that Ebersole's and Kruk's reliance on Burgess's misrepresentation was reasonable, even though the existence of the mortgage could have been discovered in a title search.

Lastly, Casey and Burgess argue that the trial court erred by finding that Casey's argument below, i.e., that Ebersole and Kruk were good-faith purchasers because they had no knowledge of the mortgage, negated their claim that Ebersole and Kruk knew about the mortgage. Casey and Burgess argue that they were entitled to assert inconsistent arguments. We note, first, that this argument was asserted by Casey alone in his motion for declaration of judgment. Moreover, Casey argued that even if Ebersole and Kruk had knowledge of the mortgage, they had no notice of a defect in the title because they were shown the quitclaim deed and the 2012 judgment, which would have led a reasonable person to believe that the mortgage had no effect on Burgess's interest. Thus, Casey's prior argument was not actually inconsistent with Casey and Burgess's claim that Burgess told Ebersole and Kruk about the mortgage. Nonetheless, the trial court's decision was not based on this prior argument alone, which it merely pointed out in a footnote. Rather, as discussed earlier, the court relied primarily on Burgess's representation that there was no mortgage on the property, which is supported by Ebersole's and Kruk's testimony at trial.

## B. CASEY'S LIABILITY FOR AIDING AND ABETTING FRAUD

Casey and Burgess also argue that if Burgess did not commit fraud, then Casey could not have aided or abetted fraud. For the reasons already discussed, however, the trial court did not err by finding that Burgess was liable for fraud. Casey and Burgess make no other argument with regard to the aiding and abetting claim. Therefore, the trial court did not err by finding Casey liable for aiding or abetting fraud.

## C. DAMAGES

Finally, Casey and Burgess argue that the trial court's determination of damages is not supported by the evidence. The trial court found that Ebersole and Kruk lost their entire investment of $154,040, and they were entitled to damages in the amount of $140,540 (their investment less a reasonable rental fee of $1,500 a month for January 2014 until September 2014). The trial court found that Ebersole and Kruk paid $72,000 in deposits, a lump-sum payment of $20,000, $20,300 in payments under the land contract, $12,600 for house painting, $5,140 for granite countertops, $5,500 for hardwood floors, and $22,700 to finish the basement. These findings are not clearly erroneous. Kruk testified that they made a down payment of $72,000, and Ebersole testified that they paid $2,900 a month from February 2014 to September 2014, and made a $20,000 enhanced payment in June 2014. These payments totaled $112,300. With regard to the improvements, Kruk testified that they paid $12,600 for painting, $5,140 for the countertops, $5,550 for the flooring, and $22,700 for the basement. Ebersole and Kruk, however, do not dispute the lower figures used by the trial court, including only $5,500 for hardwood floors and $18,500 to finish the basement. Therefore, the improvements totaled $41,740. Based on these amounts, Ebersole and Kruk's total investment was $154,040, as the trial court found.

Casey and Burgess also argue that Ebersole and Kruk should not have been awarded the full value of the improvements because they benefitted from the use of the floors, countertops, painting, and basement work while they lived at the property. The trial court, however, deducted a rental fee for their use of the property. With regard to the amount of the rental fee, Casey and Burgess inaccurately assert that the trial court deducted a total amount of $1,500, based on a monthly rate of $150, which they contend is clearly inadequate given the size of the residence. This calculation is incorrect. The trial court deducted $1,500 a month, not $150 a month, for a total deduction of $13,500. Casey and Burgess do not dispute that $1,500 a month is reasonable.

## V. QUIET TITLE AND BREACH OF CONTRACT

Casey and Burgess contend that the trial court should not have found that Burgess breached the land contract or "quieted title in the property to CitiMortgage." We disagree.

CitiMortgage's motion for summary disposition was filed pursuant to MCR 2.116(C)(10). We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013).

> In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the

-9-

moving party is entitled to judgment as a matter of law. The evidence submitted must be considered in the light most favorable to the opposing party. [*Id*. at 73 (citations and quotation marks omitted).]

"This Court reviews a trial court's factual findings in a bench trial for clear error, and reviews its conclusions of law de novo." *Trahey*, 311 Mich App at 593.

Casey and Burgess argue that Burgess's interest was not subject to the mortgage because Burgess was not a party to the mortgage and, therefore, he did not breach the land contract. They rely on *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133, 134; 657 NW2d 741 (2002), in which the plaintiff and his mother, Donna Townsend, were joint tenants with full rights of survivorship. Townsend alone executed a mortgage on the property. *Id*. After Townsend's death, the plaintiff did not make payments on the mortgage and the defendant foreclosed. *Id*. This Court held "that plaintiff is not liable on the mortgage because he was not a party to the mortgage, therefore the mortgage was effectively terminated by [Townsend's] death because her interest in the property was extinguished with her death." *Id*. at 137.

In this case, however, Casey did not die. Instead, he transferred his interest to Burgess. As the court found in the 2012 action, Casey's interest remained subject to the mortgage. When Casey subsequently quitclaimed his interest to Burgess, Burgess acquired Casey's interest subject to the mortgage, which was duly recorded and of which Burgess had actual knowledge.

MCL 565.29 provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

"Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). "[A] good-faith purchaser is one who purchases without notice of a defect in the vendor's title." *Id*. (citation and quotation marks omitted). " 'Notice' in the context of real estate law can be actual or constructive[.]" *Id*. Therefore, the trial court properly found that Burgess's interest was subject to the mortgage and entered an order of quiet title finding that the mortgage encumbered the titles of Burgess, Ebersole, and Kruk.

The trial court also properly found that Burgess breached the land contract. The land contract provided, in relevant part:

> 3.    Seller and Purchase [sic] Mutually Agree
>
> \* \* \*
>
> (b)   That if the title of Seller is evidence by land contract or now or hereafter encumbered by mortgage, Seller shall meet the payments of principal and interest there on as they mature and produce evidence thereof to Purchaser on demand. . . . When the amount owing hereon is reduced to that owning upon such contract or mortgage . . . a conveyance shall be made in the form above provided with a covenant by the grantee to assume and pay the same.

The court found that Burgess failed to use any of the land contract payments to bring the mortgage current, and he failed to convey a warranty deed when the amount that Ebersole and Kruk owed on the land contract became less than the mortgage balance. Casey and Burgess do not dispute these findings. Rather, they argue only that Burgess was not obligated on the mortgage. As discussed earlier, however, Burgess's interest was subject to the mortgage.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron

-11-