*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. O. HURT, Minor.

UNPUBLISHED
November 17, 2022

No. 360211
Wayne Circuit Court
Family Division
LC No. 20-000049-NA

*In re* HURT, Minors.

No. 360235
Wayne Circuit Court
Family Division
LC No. 20-000046-NA

*In re* HURT, Minors.

No. 360240
Wayne Circuit Court
Family Division
LC No. 20-000251-NA

*In re* HURT/ROSS, Minors.

No. 360242
Wayne Circuit Court
Family Division
LC No. 08-477244-NA

Before: MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father, J. Hurt, appeals as of right the trial court's orders entered in four separate cases, affecting his parental rights to 11 different children. In Docket No. 360211, respondent appeals the trial court's order terminating his parental rights to

-1-

AOH. In Docket No. 360235, respondent appeals an order terminating his parental rights to five children he shares with mother, D. Pearson: JDLH, JH1, JLTH, JDH, and JH2 ("the Pearson-Hurt children"). In Docket No. 360240, respondent appeals an order terminating his parental rights to three children he shares with mother, D. Burk: JSH, JNH, and JJH ("the Burk-Hurt children"). In each of those appeals, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (j). Lastly, in Docket No. 360242, respondent appeals the trial court's order declining to terminate his parental rights to JLH and JKR, but changing the permanency plan to guardianship for these two children. For the reasons set forth in this opinion, we affirm the trial court's orders.

## I. FACTUAL BACKGROUND

These cases involve respondent's 11 children with four different women. At various times, several of respondent's children have been in respondent's care. In 2010, respondent was granted full custody of JKR and JLH after the court terminated the parental rights of their mother, E. Ross, who has since died. AOH primarily lived with her mother, R. Bishop, but in 2017 she moved in with respondent and her half-siblings, JKR and JLH. Consequently, by 2018, respondent was living with D. Pearson, the five young children they shared (i.e., the Pearson-Hurt children), Pearson's two older children from another relationship, and AOH, JLH, and JKR. Respondent's other three children (i.e., the Burk-Hurt children), lived with their mother, D. Burk.

On October 9, 2019, Child Protective Services ("CPS") received a complaint alleging suspected sexual abuse of AOH. During a Kids Talk interview that followed, AOH disclosed that she had been repeatedly sexually abused by respondent, impregnated twice by him, and forced by respondent to undergo two abortions. AOH testified that the second abortion occurred after respondent forced her to place in her vagina pills that he had obtained from a friend who was employed as a nurse. In January 2020, the Department of Health and Human Services ("DHHS") filed three separate petitions seeking termination of respondent's parental rights to AOH, JKR, JLH, and the five Pearson-Hurt children. A fourth petition was filed later, seeking termination of respondent's parental rights to the three Burk-Hurt children.[1] The petitions were authorized, and the children were allowed to remain in their respective mothers' homes. Because JLH and JKR's mother was deceased, they were placed with the paternal grandmother pursuant to a safety plan. They were later placed in a licensed foster home and then eventually placed with a paternal aunt. Shortly after the filing of the petitions, the COVID-19 pandemic occurred. Because of resulting court closures and respondent's request for an in-person trial, an adjudication trial was delayed for several months.

During the July 2021 adjudication trial, the court found grounds to assume jurisdiction over the children. Then, after hearings in September and December 2021, the court found clear and convincing evidence to terminate respondent's parental rights to all 11 children under MCL

---

[1] Pearson was identified as a respondent in the petitions related to her own children and AOH, but DHHS only sought temporary custody of the children with respect to Pearson. Allegations against Pearson were related to educational neglect and cooperation or participation in the suspected home abortion in August 2019. Burk, and AOH's mother, R. Bishop, were identified as nonrespondent parents in the petitions involving their children.

712A.19b(3)(*i*) and (j). It then found that termination of respondent's parental rights to AOH, the five Pearson-Hurt children, and the three Burk-Hurt children was in these children's best interests. With regard to JLH and JKR, however, the court declined to terminate respondent's parental rights and instead changed the permanency plan for these children to guardianship. Thereafter, respondent appealed to this Court.

## II. DISCUSSION OF THE ISSUES

### A. JURISDICTION

In Docket No. 360242 only, respondent challenges the trial court's assumption of jurisdiction over JKR and JLH. Because a preponderance of the evidence established a statutory ground for jurisdiction under MCL 712A.2(b)(2), we find no error in this regard.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id.* To establish jurisdiction, the petitioner must prove by a preponderance of the evidence that a statutory basis exists under MCL 712A.2(b). *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). This Court reviews a trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). To the extent that the jurisdictional issue presents a question of statutory interpretation, this Court reviews that issue de novo. *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court exercised jurisdiction over JKR and JLH, indeed all of the children, under MCL 712A.2(b)(2), which provides that a court has jurisdiction over a child in the following circumstances:

> Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

After reviewing the record, we agree that a preponderance of the evidence established that respondent's home, by reason of cruelty, criminality and depravity, was unfit for the children to live in.

The trial court relied principally on the evidence of respondent's repeated sexual abuse of AOH to find that the foregoing statutory ground for termination was established. Respondent argues that the trial court improperly assumed jurisdiction because AOH was not a credible witness, she was allegedly sexually active with another teenager, and there was no corroborating fetus DNA to prove that he had impregnated her. Indeed, respondent asserts that the allegations of sexual abuse were fabricated. Respondent was given an opportunity to present this argument to the trial court, which found AOH's testimony and statements that respondent sexually abused her to be more credible than respondent's contrary testimony. This Court will not disturb the trial court's decision, for in applying the clear error standard in termination-of-parental-rights cases,

"regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court noted that resolution of the jurisdictional issue turned on credibility. The court found AOH's testimony at the adjudication trial to be highly credible. A preponderance of the evidence supports this conclusion. AOH testified that respondent sexually abused her repeatedly, for several months, when she was between the ages of 13 and 14. The court noted that AOH presented as a very mature witness and that her flat affect was not indicative of fabrication, but rather was simply her presentation and was similar to what was described in all of the medical records. The court also found AOH to be forthright. The court commented that the detail with which AOH spoke was striking. The court also found that AOH's description of the abuse enhanced her credibility.

AOH also testified that respondent impregnated her twice and then forced her to endure two abortions, the second being self-administered using unprescribed medications supplied by one of respondent's friends in the nursing profession. Respondent admitted taking AOH to Planned Parenthood for the first abortion, but he denied forcing AOH to abort the second pregnancy. Indeed, respondent asserts that there was no second pregnancy. The court found respondent's testimony unpersuasive, and inconsistent with documentary evidence. The existence of the second pregnancy and the self-administered second abortion were corroborated by AOH's medical records.

AOH testified that she discovered that she was pregnant for a second time in August 2019. After respondent and many of his relatives learned of this pregnancy, respondent met with a girlfriend who gave him a bag of pills. Respondent then took AOH home where he and D. Pearson instructed her to insert the pills into her vagina and remain on her back. The next day, AOH noted a blood clot in her underwear and blood running down her leg. She continued to bleed for several weeks.

AOH testified that after respondent learned she was bleeding, he took her to the hospital. As they approached the entrance to the hospital, respondent instructed AOH to report that she was hallucinating. AOH complied because respondent had threatened that she would not see her mother if she did not do as instructed. Although AOH reported that she was hallucinating, the examining physician's description of her demeanor was inconsistent with someone experiencing a psychotic event. The medical records note that AOH appeared to be relaxed and her thought content and process appeared to be appropriate and coherent. Routine testing during the visit suggested that respondent was pregnant, but an ultrasound showed no intrauterine pregnancy. The attending physician recommended that AOH undergo a second ultrasound to confirm a suspected first-trimester pregnancy and rule out an ectopic pregnancy. Respondent refused and took AOH from the hospital against medical advice. He then brought her to a second hospital the following day where the pregnancy was again suspected, but AOH's hCG levels, a hormone produced during pregnancy, had dropped considerably from the previous day.

The medical records corroborate AOH's allegations of abuse and second pregnancy. Her testimony that she was indeed pregnant a second time, and that she was likely in the process of aborting the fetus because of medication respondent forced her to insert into her vagina, is consistent with entries in the medical records. Indeed, this evidence permitted the trial court to

-4-

find that respondent took AOH to the hospital not only to confirm the termination of the pregnancy, but also to support a defense, in necessary, that AOH's accusations were the product of a mental illness.

Further, the trial court rejected respondent's suggestion that AOH was sexually active with another teenager in the home. The court held that there was no credible evidence to support this insinuation. A preponderance of the evidence supports this finding as well. AOH testified that respondent was the only person with whom she was having sex. Further, respondent's and Pearson's insinuations that AOH was having sex with other individuals, notably another male who lived in the house, was inconsistent with their other testimony. Respondent testified that he basically locked AOH in her bedroom. There was some testimony that AOH was not attending school. This evidence made it less probable that AOH could be sexually active outside the home. Pearson testified that because she had sleeping issues and was always awake, she would have known if respondent was sexually abusing AOH. However, if Pearson was acutely aware of the activities in the home, she also would have been aware if the other male member of the household and AOH were engaging in inappropriate activities. On the basis of the evidence, the trial court did not clearly err by finding that respondent and his witnesses were not credible or worthy of belief.

The court's assumption of jurisdiction necessarily turned on the credibility of AOH and respondent. The record demonstrates that the court carefully considered all of the evidence before concluding that AOH was more believable. As a reviewing court, we must defer to the special ability of the trial court to judge the credibility of witnesses. *In re LaFrance*, 306 Mich App at 723. Based on AOH's testimony, respondent engaged in multiple acts of sexual abuse over the course of several months, he impregnated her twice, and then forced her to have two abortions. Respondent's testimony showed that he did not accept responsibility for his actions. Further, JKR and JLH were near AOH's age. The potential for both physical and emotional harm to these children was very real. Accordingly, the trial court did not clearly err by finding that a preponderance of the evidence supported its assumption of jurisdiction over JLH and JKR under MCL 712A.2(b)(2), on the basis that respondent's home was unfit for children because of his cruelty, criminality, and depravity.

## B. RELATIVE PLACEMENT

In Docket No. 360242, respondent raises issues related to the placement of JLH and JKR after they were removed from respondent's care. Respondent's arguments are confusing, disjointed, and unsupported by any relevant authority. They also seem to miss the point regarding the children's placement. Respondent seemingly contends that because DHHS failed to timely comply with the provisions of MCL 722.954a(9) when making the initial placement decisions for the two children, the court erred by not dismissing the petition. Alternatively, respondent appears to argue that the trial court erred when it concluded that only the children's lawyer-guardian ad litem ("L-GAL") had standing to challenge DHHS's placement decisions. It is unclear why respondent has approached the issue from these directions when it is clear from the record that what respondent really sought was to have the children placed with a relative. The record confirms that respondent successfully accomplished this goal. In late June 2021, JLH and JLH were moved from their foster home and placed with a paternal aunt. As a result, any irregularities related to the placement of the children were rendered moot. "The question of mootness is a threshold issue

that a court must address before it reaches the substantive issues of a case." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). "An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief." *Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 493; 608 NW2d 531 (2000). Because the children were already placed with a relative, there is no relief this Court can grant. Even if respondent's arguments are considered, however, they are without merit.

MCL 722.954a governs the placement of children upon removal. Under MCL 722.954a(2), "[u]pon removal, . . . the supervising agency must, within 30 days, identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs." Moreover, MCL 722.954a(4) provides:

> (4) Not more than 90 days after the child's removal from his or her home, the supervising agency must do all of the following:
>
> (a) Make a placement decision and document in writing the reason for the decision.
>
> (b) Provide written notice of the decision and the reasons for the placement decision to the child's attorney, guardian, guardian ad litem, mother, and father; the attorneys for the child's mother and father; each relative who expresses an interest in caring for the child; the child if the child is old enough to be able to express an opinion regarding placement; and the prosecutor.

Further, MCL 722.954a(9) references Subsection (4) and addresses the procedure for challenging a child's placement:

> A person who receives a written decision described in subsection (4) may request in writing, within 5 days, documentation of the reasons for the decision, and if the person does not agree with the placement decision, he or she may request that the child's attorney review the decision to determine if the decision is in the child's best interest. If the child's attorney determines the decision is not in the child's best interest, within 14 days after the date of the written decision the attorney must petition the court that placed the child out of the child's home for a review hearing. The court must commence the review hearing not more than 7 days after the date of the attorney's petition and must hold the hearing on the record.

These statutory provisions must be considered in the context of the proceedings. JLH and JKR were removed from respondent's care on January 15, 2020. Initially, they were placed with their paternal grandmother pursuant to a safety plan. When DHHS determined that this was not a suitable placement because there was some suggestion that the grandmother failed to protect AOH, JKR and JLH were briefly moved to the home of R. Bishop, AOH's mother. When this did not work out, JKR and JLH were placed in a nonrelative licensed foster home. In February 2020, respondent filed a motion to change the children's foster care placement and requested that the children be returned to the home of the paternal grandmother. At a hearing on February 28, 2020, respondent argued that DHHS violated MCL 722.954a because it never provided any of the

interested parties with notice of the placement decision. At the conclusion of the hearing, the trial court ordered DHHS to file written notice of their placement decision as required by MCL 722.954a.

At a later hearing on March 11, 2020, the court again continued the matter for the agency to distribute the notice regarding placement. Sometime thereafter, petitioner filed the required notice of its placement decision and the reasons for the decision. Apparently, this notice found placement with the paternal grandmother inappropriate because of certain disclosures made by AOH. At the hearing that followed on June 4, 2020, the court denied respondent's motion to change JLH's and JKR's placement. In its order, the court made the following findings:

> Respondent Father's motion objecting to the agency's decision placing the children in foster care, and seeking placement of the children with the paternal grandmother is denied. Pursuant to MCL 722.954a(4) and MCL 722.954a(9), the agency has complied with the directives to make a placement decision and provide notice. The lawyer-guardian ad litem for the children has reviewed the decision placing the children in foster care, rather than with the maternal [sic] grandmother, and has determined that such placement is in the best interests of the children.

Thereafter, sometime in early 2021, respondent filed a motion requesting that the children be placed with a paternal aunt. At a hearing on May 27, 2021, the foster care worker indicated that DHHS was in the process of completing an assessment of the aunt's home. Orders entered on May 28, 2021, and June 18, 2021, indicated that the matter was continued to permit DHHS to assess the aunt's home. At the June 17, 2021 continued hearing, the court ordered that if the aunt's home were deemed suitable, the children should be placed there immediately. Sometime near June 23, 2021, DHHS approved the paternal aunt's home for placement and, in an order dated June 24, 2021, the court ordered that the children be moved from the licensed foster home into the paternal aunt's home by July 1, 2021. The children were moved pursuant to the court's order.

Regarding respondent's argument that DHHS failed to timely comply with the notice provisions, it is clear from the foregoing synopsis that DHHS did not provide notice and its reason for the placement decision within 90 days of removal. However, the court eventually ensured DHHS's compliance. Although respondent argues that this irregularity required dismissal of the petition, nothing in the plain language of the statute requires a court to dismiss the petition if DHHS fails to comply with the notice requirements within 90 days of removal. Indeed, there appears to be no penalty for failing to timely comply with the requirements of MCL 722.954a(4). Further, respondent does not cite any authority to support his position. Indeed, other than a conclusory statement, respondent has not engaged in any meaningful discussion of his position. Therefore, this argument is waived. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [his] claims, or unravel and elaborate for [him his] argument, and then search for authority either to sustain or reject [his] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted).

Respondent also asserts that the statute denies a parent due process because it only permits the children's L-GAL to challenge DHHS's placement decision. He then reasons that because the statute is unconstitutional, the trial court erred when it relied on the statute to deny his motion to change placement. It is unnecessary to address respondent's constitutional challenge to MCL

722.954a(9), as this Court will not address constitutional issues when an appeal can be resolved on alternative grounds. *In re MS*, 291 Mich App 439, 442; 805 NW2d 460 (2011). Despite the court's finding that only the L-GAL had standing to petition the court for a review hearing on a placement decision, respondent was essentially granted a full and fair hearing twice on his request that the children be placed with relatives. Indeed, after such a hearing in 2021, respondent's request for relative placement was, in fact, granted. Accordingly, respondent cannot claim that he was denied due process.

Moreover, none of the alleged irregularities affected the outcome. At the time of the termination hearing, the court declined to terminate respondent's parental rights to JKR and JLH, in part because the children were placed with a relative. The court correctly noted that a child's placement with a relative weighs against termination of parental rights and that such a placement must be considered when evaluating a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). Respondent has not shown that any irregularities related to the placement of the children had any effect on the outcome of this matter. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

## C. STATUTORY GROUNDS

In all four appeals, respondent argues that the trial court erred when it found statutory grounds to terminate his parental rights.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich at 337.

The court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (j), which permit termination under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights pursuant to these grounds.

-8-

As discussed earlier, the trial court found that AOH credibly testified that she was sexually abused by respondent multiple times, that respondent impregnated her twice, and that respondent forced her to undergo two abortions, one of them self-administered. The court also rejected respondent's testimony denying the abuse, and the testimony proposing the alternative theories that AOH was sexually active with other individuals or that her accusations were the product of mental illness. These findings are supported by clear and convincing evidence. Furthermore, they were predicated on credibility determinations that we will not disturb. See *In re Miller*, 433 Mich at 337. While this evidence was sufficient to meet the evidentiary burden for establishing jurisdiction, it also met the higher standard of proof employed when determining whether there exists a statutory ground to terminate parental rights. That is, the trial court did not clearly err by finding that the evidence clearly and convincingly showed that respondent sexually abused one of his children.

To justify termination of parental rights under § 19b(3)(b)(*i*), not only must there be evidence that the sexual abuse occurred, the court must also find by clear and convincing evidence that there exists a reasonable likelihood that the child will be harmed if returned to respondent's home. In this regard, the court did not err when it concluded that all of the children, not just AOH, would be at risk of harm if returned to respondent's care. Respondent never took responsibility for his abusive actions. Indeed, he claimed that AOH's allegations were false, he accused her of promiscuity, and he attributed her allegations to severe mental health issues that were never substantiated. Because respondent refused to acknowledge his misconduct, he was unlikely to change his aberrant behaviors. Further, not only did the evidence confirm that respondent was willing to violate well-accepted boundaries between a child and a parent by sexually abusing his daughter, he also demonstrated an extraordinary lack of parental concern and sound judgment when he illegally obtained medication and forced his child to use it to expel the pregnancy. Accordingly, the trial court did not clearly err when it found that there existed a reasonable likelihood that the children would be at risk of harm in the future.

Respondent notes, but does not explore in any meaningful way, that there was no evidence that he sexually abused any child other than AOH. However, the trial court did not err when it terminated respondent's parental right to eight of AOH's siblings. MCL 712A.19b(3)(b)(*i*) applies when a parent sexually abuses a child or a sibling of a child. It is undisputed that the Pearson-Hurt children, the Burk-Hurt children, and JLH and JKR were AOH's siblings. In *In re Hudson*, 294 Mich App 261, 265-266; 817 NW2d 115 (2011), this Court defined "sibling" as " '[o]ne of two or more individuals having one or both parents in common; a brother or sister.' " Moreover, the trial court did not err when it concluded that these children would be at risk of harm in the future if returned to respondent's care. In this regard, the anticipatory-neglect doctrine recognizes that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (citation and quotation marks omitted). However, the inference created by the anticipatory-neglect doctrine is not the only basis to impute a risk of harm to the other children. That respondent could sexually abuse a child and force an abortion without any medical supervision evidences a shocking lack of judgment, deviant personality traits, and, at the very least, poor parenting skills. Thus, it is not simply a matter of anticipating that the female children would be at risk, or that they would only be at risk as they approached their teenage years. The evidence established that respondent lacked the parenting skills necessary to safely parent any child. Accordingly, the trial court did not clearly err when it

-9-

found clear and convincing evidence to terminate respondent's parental rights to AOH and her half-siblings under MCL 712A.19b(3)(b)(*i*) and (j).

## D.  BEST INTERESTS

Respondent also challenges the trial court's finding that termination of his parental rights was in the best interests of 9 of the 11 children.  After reviewing the record, we conclude that the trial court did not err in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made."  MCL 712A.19b(5).  The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  *In re Olive/Metts*, 297 Mich App at 42.  The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history.  *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).  "The trial court should weigh all the evidence available to determine the children's best interests."  *In re White*, 303 Mich App 701,713; 846 NW2d 61 (2014).  In considering the child's best interests, the trial court's focus must be on the child and not the parent.  *In re Moss*, 301 Mich App at 87.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the relevant children's best interests.  The court gave the most weight to its finding that because respondent had repeatedly sexually abused one of his children, he posed an extreme risk of harm to all of the children.  Respondent's denial of the abuse and evidence that the extended paternal family would not protect any of the children from respondent further supports the trial court's conclusion that the children would be at risk of harm in respondent's care.  The court did not err when it concluded that keeping the children safe outweighed any benefit in continuing a relationship with respondent.

AOH will likely suffer the consequences of the sexual abuse for a lifetime.  The other children will have to process that their lives were up-ended and they were under the scrutiny of the court system and DHHS because their sister was the victim of abuse at respondent's hand.  All of the children were directly and indirectly made victims of respondent's abuse of AOH.  See, e.g., *In re Hudson*, 294 Mich App at 268.  The trial court did not err when it held that terminating respondent's parental rights would give all of the children the safety, security, and closure they require.

Respondent notes that the nine children were in the care of their respective mothers.  Pursuant to MCL 712A.19a(8)(a), a child's placement with relatives weighs against termination.  But while the fact that a child is living with a relative must be considered, a trial court may still terminate parental rights in lieu of placement with a relative if it finds that termination is in the child's best interests.  *In re Olive/Metts*, 297 Mich App at 43.  Here, the trial court specifically and appropriately made no findings related to the children's placement with their mothers.  Because a biological mother is not a "relative" as defined under MCL 712A.13a(1)(j), the trial court was not

required to weigh the children's placement with the other parent against termination. *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016).

A preponderance of the evidence supports that respondent would put the children at risk of abuse and that he is not a suitable caregiver. Accordingly, the trial court did not clearly err when it found that termination of respondent's parental rights was in the nine children's best interests.

## E. PARENTING TIME

Lastly, we need not address respondent's argument that the trial court or DHHS wrongly denied him parenting time with his children. In light of our conclusion that the trial court did not err by terminating respondent's parental rights, this issue is moot. In any event, the record does not support respondent's representations that after the September 30, 2021 hearing where the court ordered supervised parenting time with all of the children except AOH, DHHS prevented respondent from visiting his children. The trial court made it clear at the hearing that respondent was entitled to supervised visits with his children, yet the record suggests that respondent failed to follow through with the opportunities offered.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-11-