*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

KUYMELL BEER LEE COPELAND, a/k/a
KUYMELL BEERLEE COPELAND,

　　　　　Defendant-Appellant.

UNPUBLISHED
June 03, 2026
11:22 AM

No. 376529
Muskegon Circuit Court
LC No. 24-003559-FC

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant, Kuymell Beer Lee Copeland, a/k/a Kuymell Beerlee Copeland, appeals by delayed leave granted[1] the order denying defendant's objection to the admission of other-acts evidence and granting the prosecutor's motion to admit the other-acts evidence "except that the prior act be referred to as a shooting," as opposed to a "murder" or "homicide." On appeal, defendant asserts that the trial court erred in admitting the other-acts evidence of another shooting as well as text messages addressing defendant's communications regarding ghost guns and weapon jamming. We vacate the trial court's order admitting the other-acts evidence and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

At the preliminary examination, Detective Nicholas VanderMolen testified that he worked as a detective for the Michigan State Police (MSP) as part of the task force known as Muskegon Major Case Initiative (MMCI). The MMCI assisted the Muskegon Heights Police Department with investigations into violent crime and weapon related offenses. On September 6, 2023, Detective VanderMolen was called to 2231 Baker Street to investigate a homicide. At that residence, there was a black Dodge Ram pickup truck parked in the driveway. There were multiple

---

[1] *People v Copeland*, unpublished order of the Court of Appeals, entered December 12, 2025 (Docket No. 376529).

shell casings that surrounded the driver's side of the truck, were present at the front of the vehicle, and were found on the driveway that led toward the back of the residence. Additionally, many bullet holes were in the vehicle. The shell casings were marked by evidence placards and photographed, and an unfired (entire) bullet was also found at the scene. A later state police laboratory report concluded that "all the recovered fired shell casings came from the same firearm."

The individual found deceased in the truck was identified as Demarcus Latress Franklin. Franklin was struck by gunfire and died from his injuries. According to the death certificate, the cause of death was shot by gunfire, and the manner of death was homicide. After collecting evidence, Detective VanderMolen found a motive for the victim's death: a prior shooting that occurred on September 4, 2023. Specifically, the Global Positioning System location device on Franklin's truck placed Franklin at the scene of a September 4, 2023 shooting of Deandre Carter. Shell casings recovered at the scene of Carter's shooting were from a "5/7 pistol," and that type of pistol was recovered from inside Franklin's residence. Thus, the police determined that Franklin was responsible for the earlier shooting that occurred one day before. Defendant and Carter were close friends, and defendant appeared at the scene of Carter's shooting. Detective VanderMolen reached this conclusion premised on the police reports and body cameras.

Detective VanderMolen also canvassed the area to find and review surveillance camera footage from residents located near Franklin's home. During the investigation, defendant became a suspect with several pistols associated with him. Specifically, defendant had two 9-millimeter guns registered to him, and one was not located by the police. Defendant was arrested in December 2023. At that time, he had two cellular devices in his possession. On one phone, there was a photograph of defendant taken on August 25, 2023, with a rifle-style weapon next to him. Additionally, there were two pistols on the ground near defendant, and he seemingly had a magazine protruding from his pocket.

Defendant's cellular phone also contained health application data. On the phone, this application monitored a person's steps, calories, and miles walked. On September 6, 2023, at 2:35 p.m., defendant had traveled 117.01 meters on foot, and the shots were fired at Franklin at 2:34 p.m. From surveillance camera footage, the shooting suspect's vehicle entered a residence located off Maffett Street. The Maffett Street homeowner had doorbell and backdoor cameras. On September 14, 2023, at 2:26:15 p.m., defendant did a search on his phone for, "How long does Ring cameras last?" On October 1, 2023, at 9:39:32 a.m., defendant searched the sentence, "What make a bullet traceable?"

On cross-examination, Detective VanderMolen acknowledged that he could not tell whether a weapon was fired recently from a photograph. Although a 9-millimeter registered to defendant could not be located, there were also two .45-caliber pistols registered to him. Defendant was licensed to carry a weapon. The detective determined that defendant was responsible for the victim's murder because of the evidence, and information did not lead to other suspects. Franklin's aunt lived directly across the street from Franklin. Detective VanderMolen learned that she was speaking to Franklin when he was shot, but she did not see the shooter. The weapon used to murder Franklin was not located.

MSP Detective Spencer Goebel was also assigned to the MMCI. He secured video camera footage from the home directly across the street from Franklin's murder. The video depicted Franklin's truck as a female approached and spoke to Franklin. Then, an individual appeared on camera, running from west to east. He appeared to come from between the houses, running from the backyard of the home through the driveway to the front where the pickup truck was parked. This individual stopped in front of Franklin's vehicle, raised his hand, then disappeared from the video. The shooter was standing in front of the vehicle at 2:34:41 p.m., then he seemingly ran between the houses away from the scene. The woman speaking to Franklin appeared to run back across the street.

In other video secured by Detective Goebel, there was footage of a silver Camaro with black racing stripes that drove by Franklin's residence then parked on Baker Street near the time of the shooting. Specifically, this vehicle parked four homes north of Franklin's home. Then, the Camaro was driven south on Baker Street past Franklin's home and pulled into the driveway on Maffett Street at 2:32:27 p.m. An individual was seen walking down the alley between Maffett and Baker Streets before the shooting at 2:33:34 p.m. After the shooting, at 2:35:08 p.m., this individual was seen running from the area of the shooting. The Maffett driveway led into the alley, and a vehicle did not need to leave on Maffett Street. The silver Camaro was next recorded on camera driving eastbound on Hackley Street.

On cross-examination, Detective Goebel acknowledged that the videos were "a bit grainy" to the point where the sex of the assailant could not be ascertained. Additionally, the video did not record an individual leaving the silver Camaro. But the silver Camaro was owned by defendant's father. And when arrested in December 2023, defendant was removed from a residence that he shared with his father.

MSP Intelligence Analyst Parker Joseph DeGroot, who was also assigned to MMCI, testified that he obtained defendant's cellular phone and records. In normal usage, a cell phone that was powered on was constantly communicating with a cell phone tower. When a call was made, the device communicated with the strongest tower to initiate the call. DeGroot was able to correlate the cell records and times to the location of defendant's cell phone and the silver Camaro as recorded on surveillance video. The last data session on defendant's device ended at 2:30:42 p.m. Additionally, there were two undelivered text messages at 2:34:56 p.m. This signified that defendant's device had been turned off, placed in airplane mode, wrapped in tin foil, or was in a location where it could not communicate with the network such as a deep basement. The next session began at 2:35:47 p.m.

Deandre Evans currently had a sentencing pending before the trial judge. Although Evans had not received an agreement from the prosecutor in exchange for his testimony, he hoped for some consideration for his cooperation. In September 2023, Evans considered defendant to be "a brother." Evans learned of Franklin's death through "the streets." On September 6, 2023, at Londae Copeland's home, Evans was present with Londae and defendant, and they were "smoking weed." Evans asked if they heard about the murder that occurred off Maffett Street. Defendant said that he did it to "get back." Specifically, defendant said, "I did that." Evans did not ask for further details because he knew what defendant meant. Evans failed to give this information to the police because he was "into the streets" and selling drugs with defendant and Londae. But on December 4, 2023, Evans was seated in a vehicle when he was shot by defendant. During the

shooting, another vehicle occupant, Timothy (a/k/a TJ) Dodge, was killed. After being shot, Evans told the police about defendant's prior statements admitting to killing Franklin.

On cross-examination, Evans acknowledged that he faced charges for drugs and fleeing and eluding. Although those charges may have occurred in February 2023, Evans did not speak to the police until December 2023. Despite learning about Franklin's death, Evans continued to sell drugs. Evans explained that things changed after defendant tried to take Evans's life. Evans testified that he was "speaking the truth" and hoping for leniency in his drug case.

The prosecutor moved for defendant's bind over. Defendant challenged the lack of identification evidence and claimed that Evans was not credible. The district court concluded that there was sufficient forensic evidence to bind defendant over on the charges of open murder, see MCL 750.316, MCL 750.318,[2] and MCL 767.71,[3] and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, even without considering Evans's testimony.

The information filed on August 13, 2024, also reflected that defendant was charged as a habitual offender, second offense, MCL 769.10. On November 21, 2024, the prosecutor filed a notice of intent to introduce other-acts evidence.[4] The prosecutor argued that the evidence was "offered to prove intent, motive, plan or scheme and identity." It was also claimed that the reports addressing the other-acts evidence were previously given to defendant. The prosecutor delineated the following as being admissible:

> The People are aware of the concerns voiced by the Court in the People v Kuymell Copeland trial into [sic] the homicide of Timothy Dodge. During pretrial motions regarding that matter the court suggested that although there was significant probative value the potential prejudice of interjecting another "murder" was too great, and the evidence was not necessary for the prosecution. As a result, the

---

[2] "The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree[.]"

[3] "In all indictments for murder and manslaughter it shall not be necessary to set forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased; and it shall be sufficient in manslaughter to charge that the defendant did kill the deceased."

[4] Defendant was convicted of open murder, assault with intent to commit murder, and two counts of felony-firearm for offenses that occurred December 4, 2023. He was sentenced on December 17, 2024, after a jury trial, to life imprisonment for open murder, 23 to 100 years' imprisonment and two years' imprisonment for each felony-firearm conviction. <https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=822581> (accessed June 3, 2026). Defendant has a claim of appeal currently pending from these convictions, Docket No. 375137.

-4-

People are only requesting to refer to the previous incident as a shooting. All witnesses will be instructed to omit any testimony regarding a death.

1. The defendant now stands convicted of Murder- 1st Degree for the homicide of TJ Dodge. The prosecution intends on eliciting testimony regarding that incident to show common plan or scheme. During the shooting of Timothy Dodge[,] the defendant[,] after surveilling Dodge, drives around the block and accesses Dodge and his companions through an alleyway adjacent to the homicide scene. Approaching on foot[,] the defendant fires into the parked vehicle of Dodge and Evans. Dodge is killed[;] Evans is injured. The defendant then flees through the alleyway [and] then back into the vehicle. A Glock, 9mm firearm is used in this shooting. That firearm malfunctions in a similar manner to that of the charged offense resulting in a live 9mm cartridge being deposited at the shooting scene.

2. The people intend on eliciting testimony regarding the defendant's confession to De[a]ndre Evans. Although not squarely within the confines of MRE 404B [sic] such testimony by Evans will necessitate inquiring of his bias and motivation. The truthful response from Evans will certainly include that the defendant is responsible for shooting Evans, which prompts his cooperation with police.

3. The prosecution intends on eliciting text messages contained on the cellular devices which evidence the defendant[']s access too [sic] and transfer of "ghost" guns and other modified firearms consistent with that used in this homicide.

On December 17, 2024, defendant filed a motion to exclude the other-acts evidence as set forth in the prosecutor's notice. It was asserted that MRE 404(b)(1) evidence was inadmissible when offered to prove a character trait and conformance with that trait. Further, the prosecutor had the burden of establishing the relevancy of such evidence and an exception to the general rule of exclusion. Therefore, defendant sought to hold the prosecution to its evidentiary burden. Defendant's motion consisted of one-page and was not accompanied by a brief.

Although defendant filed a motion to exclude the other-acts evidence in December 2024, he waited until March 12, 2025, two days before the hearing on the motion, to file a brief in opposition to the admission of the evidence. Therein, defendant alleged that the prosecutor sought to admit this evidence "to show intent, motive, plan or scheme, and identity." And when analyzing the admission of this evidence, the courts should not merely accept that the evidence is offered for a proper purpose, but must scrutinize the logical relevance of the evidence. Defendant alleged that the proposed other-acts evidence was inadmissible because it was offered to show identity, the only controverted element. When modus operandi was used to show identity, there must be special characteristics so uncommon, peculiar, and distinctive that it led to the conclusion that it was committed by one person, the defendant, in light of the distinctive "touch." A person's actions, sneaking up to a car, shooting at it, and then running away, was not a distinctive hallmark. The commission of two crimes with the same type of weapon, a Glock, and a live round left at the scene also did not sufficiently prove identity.

Defendant alleged that the prosecutor also argued that the other-acts evidence was offered to explain the "bias and motivation" of witness Evans. But other-acts evidence was not admissible

to bolster the truthfulness of witness testimony. This was not a valid ground for admission. And the admission of text messages to show defendant's involvement with "ghost guns" was not an element of the offense and failed to establish the commission of murder. This evidence was not offered to identify defendant as the person that killed the victim, but to show that defendant engaged in "shady dealings with untraceable guns." Thus, defendant asserted that the prosecutor's proposed MRE 404(b) evidence should be excluded.

A hearing was held to address the admissibility of other-acts evidence. The prosecutor argued that a homicide occurred in the 2200 block of Baker Street. The shooter appeared to surveil the location for a period of time. Then, the shooter drove around the block, parked in a driveway, left the vehicle, proceeded in between two homes, approached Franklin's vehicle and fired into it, killing Franklin. There was video indicating that the shooter had to manipulate the weapon, allowing a live 9 mm cartridge to be left on the ground. The shooter then fled in a vehicle accessible to defendant because it was owned by defendant's father. Further, defendant's cell phone records placed him in the vicinity of the homicide at the time it occurred. The prosecutor also offered that there would be testimony to indicate the firearm used was consistent with a Glock reproduction ghost gun, specifically, a 3D printed firearm without a serial number.

The prosecutor stated that the MRE 404(b) evidence from defendant's prior murder trial was admissible "to show both identity and common plan [or] scheme." The previous murder trial also involved a 9 mm Glock firearm. Defendant had multiple 9 mm weapons registered to him and not all of those firearms were recovered. Also, there was extensive testimony about text messages sent from defendant's phone wherein he acknowledged the possession of a ghost gun that was equipped with a Glock auto switch that was malfunctioning. It was also represented that, in the present trial, Evans would be questioned about a delay in cooperation against defendant, his longtime friend. It was essential to present evidence that defendant admitted to Evans that he shot Franklin. After that acknowledgment, defendant and Evans had a "falling out" that caused defendant to attempt to kill Evans. Although admission of this evidence would reveal the murder of Dodge, the prosecutor would not disclose that a homicide occurred, but would limit the testimony to showing that a shooting happened. The prosecutor acknowledged that the Dodge shooting did not involve a ghost gun but a tan Glock. However, this shooting also involved the gun malfunctioning and supported defendant's complaint in text messages that the gun was not operating as it should.

The trial court questioned whether the evidence was offered to show identity. The prosecutor agreed, but also noted that it was offered to show common plan or scheme, stating:

> Both of these incidences involve an individual surveilling the victim, driving around the block, parking in a residential driveway, using the rear alleyway of the residence to approach victims who are seated in vehicles *** approaching the vehicle, firing into the vehicle with a Glock nine millimeter. *** And that gun malfunctioning with a nine millimeter live cartridge being discarded at both homicide scenes.

The prosecutor acknowledged the trial court's concern that a shooting in a vehicle was not an uncommon occurrence. It was emphasized that what was uncommon was the manner of surveillance and the approach of lying in wait, which was factually specific. The Evans shooting

occurred days after a house was raided. Franklin's shooting occurred days after defendant's associate, Carter, was killed by Franklin. Although the gun used was not the same in both shootings, the second gun was a reproduction of the first such that the firing pin was the same on both.

Defense counsel alleged that the video was so grainy, the sex of the assailant was not apparent. And it was also asserted that the poor video quality did not clearly show a gun malfunction occurred. The defense objected to any argument regarding the value of the evidence pertaining to identity. Counsel also challenged the use of the evidence to show common plan or scheme relating to the killing style when the evidence of malfunction could not be established. Additionally, the credibility of Evans was questioned, noting that he offered information regarding this shooting only after claiming that defendant shot at him. Evans could not provide specific details about the place where the conversations occurred. Evans also had a drug conviction for which he received a favorable sentence. Consequently, the defense argued that "there's no common plan or scheme" and identity evidence was also lacking.

The trial court noted that character evidence was impermissible, and the prior shooting could not be used to show that defendant had a propensity to shoot people. The court then stated:

> The court did preside over the Timothy Dodge murder and . . . heard the testimony; and there was . . . a motion to allow the evidence of . . . the current case into that case. And I was concerned because, well, you know, what's really, you know, the commonality here? You know, sneaking up and shooting somebody, that's not really that common. The court has the benefit now of having heard that entire trial. And, you know, my ruling might have been a little differently [sic] having understood everything completely after having the benefit of all the testimony. This, [the prosecutor] is saying he's offering it to show common scheme or identity. It sounds like identity is a . . . major issue in the current case. And there's always a chance of prejudice anytime you introduce evidence of a prior conviction or prior bad acts. The standard is not whether it prejudices the . . . defendant; it's evidence is detrimental, the defendant [sic] is always gonna' prejudice the defendant. The question is whether the probative value is outweighed by the prejudicial effect.
>
> In this particular case there is enough here that the court does find that the 404B [sic] evidence is relevant and . . . should be permitted pursuant for the purpose of identity or common scheme plan. The - - as indicated to the parties in chambers several weeks ago, the concern is . . . I don't think it needs to come in that [defendant] committed a murder or was convicted of a murder. I think that is certainly more prejudicial than probative. So, what . . the court is gonna' allow is essentially details regarding the shooting in terms of, you know, the jam, the text messages regarding the switch, the ghost gun. Those things that specifically the Prosecutor's offering for identity. What I'm not gonna' allow is any reference to what happened in that case, what [defendant] was charged with, what happened to Mr. Dodge, anything that even suggest that [defendant] was even charged or convicted of a murder.

The trial court also acknowledged that the probative value was not outweighed by prejudicial effect pertaining to identity. The trial court instructed the parties not to question the witnesses about details that would implicate defendant's constitutional rights.

Defendant moved for reconsideration of the trial court's other-acts decision, arguing that the proposed evidence was irrelevant "for any purpose other than propensity," the probative value was greatly outweighed by "unfair prejudicial impact," and this evidence was correctly excluded by the trial court in the first trial. Defendant sought reconsideration because the trial court reached the correct result in that trial. Also, for the first time on reconsideration, defendant argued that because the occurrence of the act was undisputed, the issue could not be one of common plan or scheme, but only identity. Therefore, the test of *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982), must be applied. The trial court denied the motion for reconsideration as untimely.

## II. STANDARD OF REVIEW

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence preclude admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). A decision on a close evidentiary question generally cannot constitute an abuse of discretion. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Under MRE 103(a) "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]"

## III. ANALYSIS

Defendant argues that the trial court abused its discretion in admitting other-acts evidence pertaining to the shooting of Dodge and text messages addressing the weapons and jamming. We vacate the trial court's ruling regarding admission of other-acts evidence and remand for proceedings consistent with this opinion.

The general rule pertaining to the admissibility of other-acts evidence, MRE 404(b), is that "evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such crimes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). MRE 404(b) pertinently states:

(b) Other Crimes, Wrongs, or Acts.

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.

A mechanical recitation of a permissible purpose of MRE 404(b) evidence without offering how the evidence relates to the identified purpose does not justify admission under MRE 404(b). *Denson*, 500 Mich at 400. "[M]erely *reciting* a proper purpose does not actually demonstrate the

*existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible." *Id*.

> In *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), [amended 445 Mich 1205 (1994),] this Court articulated the factors that must be present for other acts evidence to be admissible. First the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" *Id*. Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).]

The *VanderVliet* four-part test requires the prosecutor to meet the initial burden of establishing evidentiary relevance to prove a fact within the exceptions to the general exclusionary rule of MRE 404(b). *People v Crawford*, 458 Mich 376, 385; 582 NW2d 785 (1998). If the evidence is solely relevant to the defendant's propensity to commit the crime, the evidence must be excluded. *Id*. But, if the evidence also proves a fact other than character, the admission is contingent upon whether the probative value outweighs the prejudicial effect. *Id*. This review includes the consideration of whether a limiting instruction may buffer the evidence's prejudicial effect. *Id*. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 400. But when the proponent of other-acts evidence presents a modus operandi theory to prove identity, the applicable test is under *People v Golochowicz*, 413 Mich 298, 307-309; 319 NW2d 518 (1982). See *People v Mardlin*, 487 Mich 609, 621; 790 NW2d 607 (2010) ("*Golochowicz* thus established a test for admission under such a theory that required substantial evidence that the defendant committed the prior act and some 'special quality' of the act that tended to prove the defendant's identity."). The *Golochowicz* test has been summarized:

> [A]t the time of trial[,] . . . before evidence of the defendant's other misconduct may be admitted: (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly difference language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. [*Golochowicz*, 413 Mich at 309.]

The test for relevancy is stricter when used to prove identity. *Id*. at 324-325.

Other-acts evidence may include charged and uncharged acts that are "constituent parts of a plan in which each act is a piece of the larger plan." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). But "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme,

or system." *Id*. "Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id*. "Relevant evidence thus is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *Id*. at 57. "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id*. (quotation marks and citation omitted). "A material fact is one that is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id*.

All elements of a criminal offense are placed "in issue" when a defendant pleads not guilty. *Crawford*, 458 Mich at 389. "Because the prosecution must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements, the elements of the offense are always 'in issue' and, thus material." *Id*. When an offense requires proof of knowledge and intent, the first requirement of relevancy, materiality, is met. *Id*. And the minimal threshold of making the existence of a fact of consequence more probable has sufficient probative force subject to the gatekeeper role of MRE 404(b). *Id*. at 390, see also MRE 401.

The record discloses that the prosecutor sought admission of other-acts evidence to establish identity as well as common scheme or plan. The trial court did not address and state whether the test of *VanderVliet* or *Golochowicz* applied. On appeal, the prosecutor apparently abandons the admission of the evidence on common scheme or plan grounds and simply argues that, when applying the *Golochowicz* test, an abuse of discretion did not occur.[5] Because the trial court did not specifically delineate the theory of admissibility at issue, the appropriate legal test to

---

[5] In the motion for reconsideration, defendant alleged that the only logical relevance of the evidence was to show identification, warranting application of the *Golochowicz* test and citing *People v Heath*, 510 Mich 941 (2022). Specifically, defendant alleged that because it was undisputed that the homicide occurred, the only issue remaining was identification. And at oral argument before this Court, defense counsel acknowledged that he was conceding all the elements of the charged offense except identification and that would be the theory raised at trial. The parties do not address the ramifications of such a concession on the intent requirements of first and second-degree murder, see *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010); *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002), as encompassed in the open-murder charge, MCL 750.318. Further, disputed evidence may be tendered to show identity but also "evidence of another crime may be relevant on more than one of these ultimate issues." See *People v Engelman*, 434 Mich 204, 214; 453 NW2d 656 (1990). But the prosecutor does not argue that *Golochowicz* provides the appropriate test to examine the identity issue and that *VanderVliet* may be applied to determine whether a common plan or scheme occurred. On remand, the parties should be clear regarding the theory for admission of other-acts evidence, an appropriate offer of proof, and whether a prior theory has since been abandoned.

apply, and an analysis of the respective factors, we vacate the trial court's decision and remand for a determination of the appropriateness of admission.[6]

In addition to challenging the trial court's admission of other-acts evidence pertaining to the other shooting, defendant contends that the trial court abused its discretion by admitting the text messages. However, it does not appear from the lower court record that the text messages were submitted to allow the trial court to conduct an in-depth analysis of the issue. Rather, the trial court seemingly relied on its recollection of them from the first trial. We cannot determine from the record whether defendant complained about the pertinence of the texts as related to the modification or firing pin on the weapon, the role of ghost guns, and any correlation between the other-acts evidence without the content of the text messages being submitted. When the lower court's findings are insufficient for this Court to determine whether the trial court reached the proper result, a remand to the circuit court to specifically state its factual findings is appropriate. *Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 489; 608 NW2d 531 (2000); see also *People v Abbott*, 330 Mich App 648, 659; 950 NW2d 478 (2019) (remanding to determine whether the court made factual findings regarding the offense variable because it is the province of the trial court). Accordingly, we vacate the trial court's decision regarding the admission of other-acts evidence and remand for the submission of the text messages and a determination of the admission of other-acts evidence in light of the prosecutor's seeming reliance on *Golochowicz*.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[6] The trial court may request supplemental briefing or clarification from the parties regarding the theory of admission or whether prior theories were abandoned.

-11-